Red Hook Cold Storage Co., Inc, et al., Respondents, *v.* Department of Labor of the State of New York et al., Appellants.

Argued October 5, 1945; decided November 29, 1945.

*Nathaniel L. Goldstein, Attorney-General (Irving Galt* and *Orrin G. Judd* of counsel), for appellants. Plants specializing in fruit-grading, sorting and packing, and in preserving fruits in cold storage under mechanical refrigeration, are " factories " both under subdivision 9 of section 2 of the Labor Law and exclusive of statute. It was error to annul a determination of the Board of Standards and Appeals upholding administrative factory regulations prescribed for the safety of those exposed to the working hazards of such plants, their machines and appliances. (*North Whittier Heights C. Assn.* v. *National L. R. Board,* 109 F. 2d 76; *Chester C. Fosgate Co.* v. *United States,* 125 F. 2d 775; *Minor Walton Bean Co.* v. *Michigan Unemployment Compensation Commission,* 308 Mich. 636; *State* v. *Christensen,* 18 Wash. 2d 7; *Park Floral Co.* v. *Industrial Commission,* 104 Col. 350; *Edkins* v. *Board of Education,* 287 N. Y. 505; *Matter of Kast* v. *Lacona Sand & Gravel Co.,* 250 App. Div. 679; *Matter of Mounting & Finishing Co.* v. *McGoldrick,* 294 N. Y. 104; *Board* v. *Hearst Publications,* 322 U. S. 111; *People* v. *Kent Stores, Inc.,* 248 App. Div. 763, 272 N. Y. 371.)

*Benson R. Frost* and *Richard F. Russell* for respondents. I. Respondents are not engaged in manufacturing and the build-

ings used and occupied by them are not factories. (*Brainard* v. *N. Y. C. R. R. Co.*, 242 N. Y. 125; *Atwater & Co.* v. *Panama R. R. Co.*, 246 N. Y. 519; *Shapp* v. *Bloomer*, 181 N. Y. 125; *Shannahan* v. *Empire Engineering Corp.*, 204 N. Y. 543; *People ex rel. E. S. Dairy Co.* v. *Sohmer*, 218 N. Y. 199; *People* v. *Knickerbocker Ice Co.*, 99 N. Y. 181; *Hartranft* v. *Wiegmann*, 121 U. S. 609; *Anheuser-Busch Assn.* v. *United States*, 207 U. S. 556; *Tide Water Oil Co.* v. *United States*, 171 U. S. 210; *Matter of Rheinstrom & Sons Co.*, 207 F. Rep. 119; *People* v. *Stevens Co.*, 178 App. Div. 306; *People* v. *Cross & Brown Co.*, 232 App. Div. 587.) II. Respondents are not engaged in making, altering, repairing, finishing, bottling, canning, cleaning or laundering any article or thing in whole or in part within the meaning of the statute. (*People* v. *Cross & Brown Co.*, 232 App. Div. 587; *Anheuser-Busch Assn.* v. *United States*, 207 U. S. 556; *People ex rel. E. S. Dairy Co.* v. *Sohmer*, 218 N. Y. 199; *Kelly* v. *City of New York*, 288 N. Y. 641.)

DESMOND, J. The Department of Labor, on the assumption that the establishments of plaintiffs are " factories " within section 2, subdivision 9, of the Labor Law, issued and attempted to enforce certain departmental orders or regulations having to do with the health and safety of plaintiffs' employees. Plaintiffs refused to comply, asserting that their places of business are not " factories ". The matter was reviewed by the State Board of Standards and Appeals, which upheld the Labor Department's orders. Plaintiffs then brought this action, under section 111 of the Labor Law. Special Term decided in favor of plaintiffs. On appeal to the Appellate Division, Second Department, that court described the activities of plaintiffs and, concluding that the statutory definition did not cover the businesses conducted by them, affirmed the judgment. We granted leave.

Subdivision 9 of section 2 of the Labor Law is in part as follows: " ' Factory ' includes a mill, workshop or other manufacturing establishment and all buildings, sheds, structures or other places used for or in connection therewith, where one or more persons are employed at manufacturing, including making, altering, repairing, finishing, bottling, canning, cleaning or laundering any article or thing, in whole or in part * * *."

The testimony as to how plaintiffs carry on their (separate but similar) businesses was given by the managers of the two plants and is undisputed. Apples are picked by the farmer in the farmer's orchard and there put into crates, then picked up by the farmer's truck or another truck, then brought to the premises of one of the plaintiffs, unpacked and piled away until there is opportunity or order for their sale, whereupon they are taken into a packing room, dumped on a sizing machine and sorted into different grades by the sizing machine which is driven by a motor and carries the apples along on a moving belt dropping them into different bins for different sizes. Thereafter they are put into boxes, marked as to size and grade, and then, if they are not to be shipped out immediately, put back into the " cold room ". One of the plants (Germantown) handles pears also but does not grade the pears; in fact it grades only a small percentage of the apples, most of them being merely stored. In the grading operation apples are handled and inspected by employees who throw away the culls. As to the refrigeration of the apples that are kept in cold storage, the refrigeration machine is run by an engine and compressors, etc., that is, a refrigerant is run through the pipes. The sorting operation at the Germantown plant employs about twelve or thirteen people, including office employees, during the " fill " period, then drops down to about six after the fill is completed, then goes back up to twelve or thirteen during the packing operation. Besides, four engineers work on the refrigerating apparatus. The only machines in the Germantown building are the power-driven grading machine, refrigeration machinery and elevator. The farmer continues to own the apples or pears all the time. The boxes in which the apples are packed are solid except that they have a slatted top.

The other (Red Hook) plant has three refrigeration machines and its operations are essentially the same as that of the Germantown plant except that everything is on a somewhat larger scale. The Red Hook plant has two apple grading machines. At neither plant is the fruit washed or cleaned. A small percentage of the fruit is " fancy " and is wrapped in sealed paper cartons, for sale in that form.

Plaintiffs say that these are merely storage warehouses. The State says they are " factories ", if not according to some

of the usages of that word, at least " factories " within the fair meaning of the expanded definition in the statute. The Board of Standards and Appeals thought that the handling of fruit in these plants involved " altering " and " finishing " within the very words of the statutory definition, and, in any case, that the statute should be liberally construed since it is a safety statute. The " alteration " that the Board had in mind is that the apples, arriving in an ungraded mass, are sorted by machines into sizes and grades. The opinion of the Appellate Division points out that the word " factory " ordinarily means a place for fashioning raw material, by human labor and machinery, into a product suitable for use in a different form and holds that the eight so-called categories in the statutory definition did not expand the word " factory " to include this business because, said the Appellate Division, the fruit is not changed in any way but is merely stored, then shipped.

Originally the word " factory " in the Labor Law was defined as including " also any mill, workshop or other manufacturing or business establishment where one or more persons are employed at labor " (L. 1897, ch. 415, § 2). So long as the statute stood that way the courts held that " factory " meant only a place where " manufacturing " in the narrow sense was carried on, that is, where something was constructed or converted from raw or imperfect material into a finished article (*Shannahan* v. *Empire Engineering Corp.*, 204 N. Y. 543, 548). This court, in the *Shannahan* case, said that the Labor Law in this connection should be read in a natural way. There the place of employment was a tugboat, navigating the Hudson River but claimed by plaintiff Shannahan to be a " factory "; this court pointed out that the Legislature could not, by the word " factory ", have meant a vessel. In 1917 (ch. 694) the Legislature amended the statute to its present form (so far as here material), by adding the words " including making, altering, repairing, finishing, bottling, canning, cleaning or laundering any article or thing, in whole or in part ". It seems plain that the Legislature intended by that change to expand greatly the concept of " manufacturing ". The State does not claim that any cleaning is done in this plant but it argues that what is done is " altering " or " finishing " and, further, that the operation is so close to " bottling " or " canning " that it is within the general meaning of the statute.

It may be conceded that the operations of plaintiffs are not within the strict letter of the statutory definition. They seem, however, to be well within its intendment. Plaintiffs' operations are something more than dead storage. The fruit is to some extent handled and sorted by machinery. The courts construe such statutes liberally in an endeavor to apply the Labor Law's protections where protection is needed and where the operations conducted are of the sort as to which the Legislature wished to protect employees (see *Surace* v. *Danna,* 248 N. Y. 18, 21; *Met. Life Ins. Co.* v. *Labor Relations Board,* 280 N. Y. 194, 205). We should not force the Legislature, in its proper purpose of furnishing such protection in all appropriate situations, to continue adding new and precise language to describe accurately and closely every particular special operation. For instance, the statutory definition mentions " canning ". It is plain enough that an establishment engaged in canning or processing fruit is generally considered a " canning factory ". In fact, section 171 of the Labor Law, by an exception therein, shows that the Legislature intended to include such establishments within the definition of " factory ". Differences between such plants and those of plaintiffs are: first, that the fruits sent out from plaintiffs' places of business are not cleaned or changed in form or appearance and have no preservative added, and, second, the largest part of the operation here is warehousing. On the other hand, the commercial purpose is the same here as in " canning factories " and the necessity for protection is similar, so that the legislative policy should be the same.

As above stated, the Legislature in 1917 took the earlier definition of a " factory " and added the words: " including making, altering " etc., etc. Respondents argue that the 1917 addition of the word " including " and the words which follow it, was for the purpose of limiting, not expanding, the concept of a " factory ", that is, that no place thereafter could be considered a " factory ", even though common speech would call it such, unless there was carried on therein one of these specified kinds of activity: " making, altering, repairing, finishing, bottling, canning, cleaning or laundering ". In other words, the argument is that, with those words added, the statute thereafter constituted a complete and categorical list of the only operations which were to be considered " manufacturing " under the

factory safety laws. " Including " is a word of several shades of meaning depending on the context. " It may be used in the sense to comprise or embrace; or to contain or to express the idea that a thing in question constitutes a part only of the contents of some other thing; as a word of enlargement; in other words ' to comprise as a part or as something incident or pertinent.' (Words & Phrases [2nd Series], vol. 2, p 1006) ", (*Matter of Frey*, 154 Misc. 421, 423; see *Matter, of Goetz*, 71 App. Div. 272, 275; *Baker* v. *Schleyer*, 233 App. Div. 584, 586). " Including " may be used to bring into a definition something that would not be there unless specified, or it may be used to show the meaning of the defined word by listing some of the things meant to be referred to, but not by such listing excluding others of the same kind. Considering the manifest legislative purpose of protecting workers exposed to machinery, rather than of legislating as to precisely classified businesses, we take the word " including " as being here used to show that the Legislature intended to broaden, not narrow, the concept of " a factory " and that the list of operations which follows was not intended for purposes of precise itemization, but more or less illustratively.

Two Federal cases should be noticed, at least for the purpose of showing how other courts approach the problem of interpreting definitions in statutes intended to protect industrial workers. In *North Whittier Heights C. Ass'n* v. *National L. R. Board* (109 F. 2d 76, 9th Circuit 1940, certiorari denied 310 U. S. 632), the question was whether certain workers were covered by the Federal Labor Relations Act or whether they came under the exemption of agricultural workers. The plant in question was in the business of " receiving, handling, washing, grading, assembling, packing and shipping the citrus fruit ", that is, shipping out the fruit unchanged in form except as cleaned. The Circuit Court held that the men were not agricultural laborers but within the statute, saying this: " when the product of the soil leaves the farmer, as such, and enters a factory for processing and marketing it has entered upon the status of ' industry ' " (p. 80). The court went on to say that there was thus as much need for Wagner Act protection as in any other industry. A quite similar case under the Federal Social Security Act is *Chester C. Fosgate Co.* v. *United States* (125 F.

2d 775, 5th Circuit 1942, certiorari denied 317 U. S. 639). There the same holding was made; that men working in a plant where citrus fruits were stored, cleaned and shipped were industrial and not agricultural workers.

In *Matter of Mounting & Finishing Co.* v. *McGoldrick* (294 N. Y. 104, 108), a few months ago, in construing the New York City sales tax and deciding whether certain transactions came within it, we said this: " Of course, statutory construction is the function of the courts ' but where the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court's function is limited ' (*Board* v. *Hearst Publications*, 322 U. S. 111, 131). The administrative determination is to be accepted by the courts ' if it has " warrant in the record " and a reasonable basis in law ' (same citation). ' The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body ' (*Rochester Tel. Corp.* v. *U. S.*, 307 U. S. 125, 146).''

The Department of Labor, we hold, did not exceed its powers when it dealt with these places of employment as " factories '', and so the judgments should be reversed and the complaint dismissed, with costs in all courts.

LOUGHRAN, Ch. J., THACHER, DYE and MEDALIE, JJ., concur; LEWIS, J., dissents; CONWAY, J., dissents upon the authority of *Matter of Lazarus (Corsi)*, (294 N. Y. 613).

Judgments reversed, etc.