HUBERT P. BECK, Appellant, *v.* TEACHERS' RETIREMENT BOARD OF THE CITY OF NEW YORK, Respondent.

First Department, December 19, 1961.

224

*A. Mark Levien* of counsel (*Nathan I. Hodas*, attorney), for appellant.

*Isidore Heyman* of counsel (*Seymour B. Quel* and *Joseph M. Callahan, Jr.*, with him on the brief; *Leo A. Larkin, Corporation Counsel*, attorney), for respondent.

BREITEL, J. Plaintiff teacher, in an action for a declaratory judgment, appeals from an order and judgment granting defendant Retirement System judgment on the pleadings dismissing the complaint. Plaintiff had moved pursuant to rule 112 of the Rules of Civil Practice for judgment in his favor.

The principal issue is whether plaintiff is entitled to purchase credit, in the New York City Teachers' Retirement System, out of his own funds, for previous service as a teacher outside the State before he joined the New York City college system. Also involved, if plaintiff is otherwise entitled to purchase credit for such service, is the basis upon which the cost is to be computed, namely, whether at the salary plaintiff had when he entered the Retirement System, or at the salary attained by him when he applied to purchase such credit. Since plaintiff has had substantial salary increases, the difference in cost to him is considerable.

Plaintiff joined the city college system on September 1, 1947. Before that he had taught in schools outside New York State for over 14 years. Insofar as the pleadings show, he was not a member of any retirement system before 1947. He wishes, nevertheless, to purchase credit for such previous service outside the State in order to enhance his retirement benefits. Shortly after entering the system he asked for a statement of his previous service. He did not say he intended to purchase such credit; he asked only what that credit might be. He received no answer.

In 1951, because of impending statutory changes, he again asked the system for the amount of his credit, but this time he asked what the cost would be, and when it would be most advantageous for him to pay the cost. He received no answer.

Not until March, 1957 did plaintiff receive word from the system that he was entitled to credit for 11 years, 11 months, and 21 days.* The cost was computed at $6,041.95 on his then attained salary. He protested that he should not be penalized for the system's delay in certifying his previous service and he asked for a recomputation.

When the dispute was not resolved in his favor he brought this action. In the course of the proceedings the system convinced Special Term, not only that plaintiff was not entitled to purchase credit for previous service based on his lower initial salary, but that he was not entitled to purchase credit for previous service under any circumstances.** Judgment in favor of defendant system was directed and entered accordingly.

For the reasons which follow, the order directing judgment in favor of defendant system should be modified, and the proceedings remanded, a trial being necessary to determine issues of practical construction of the applicable statute and the effect of defendant's delay in certifying plaintiff's allowable credit for previous service.

Generally, public retirement systems in this State provide credit for previous public service with prior membership in another of the actuarial retirement systems in the State (e.g., Administrative Code of City of New York, § B3–5.0; Retirement and Social Security Law, § 41). It is the rare public retirement system (and, indeed, the rarer private retirement system) which provides credit for previous service in employment not covered by any other retirement system, or, if providing such credit, does not require a transfer of accumulated reserves. However, the city teachers' system was for many years governed by a provision granting just such credit to new members (Greater New York Charter, § 1092, subd. H, as last amd. by L. 1931, ch. 260). Under such provision, credit

---

* In 1953 plaintiff was also provided with a tentative statement of credit and the cost of purchase of such credit. For some reason, neither party makes much of this earlier statement.

** In the course of the litigation another issue between the parties has been laid to rest. Under the system's resolution adopted to implement the legislation on which the primary issue turns, and which will be discussed later, a teacher member who purchases previous service credit must surrender, in writing, the right to recover his purchase contribution in the event of withdrawal from the system. Plaintiff had resisted giving such written surrender, but he now abandons in this court any such contention.

was given for previous service, without financial contribution by the members or the transfer of reserves from another retirement system, for "teaching or supervisory service not exceeding fifteen years, in schools and colleges not maintained by the city". This highly beneficial provision undoubtedly was designed to attract needed teachers into the system. It was, however, a costly one for the city, or at least it was later so asserted.

In 1935 the statute was amended to provide, in effect, that such credit with respect to any person becoming a member after June 30, 1935 should be given "only to the extent that reserves sufficient to purchase credit for such previous service are transferred to the teachers' retirement system" (now Administrative Code, § B20-4.0, subd. a, par. 3, as amd. by L. 1935, ch. 693).*

Before considering the impact of the amended statute it should be recognized that there are, at least roughly, three groups of new members who might assert claims for credit for previous service. The first group consists of those who belonged to a retirement system, compatible with the system, with reserves reflecting contributions available for transfer to the system. The second consists of those who belonged to systems with reserves which are not available for transfer. The third group, and this is the one to which plaintiff belongs, consists of those who had previous service but belonged to no system. Of course, other groups could be added and other classifications made, but they would not be significant to this discussion.

Reading the statute literally, and the system would not choose to read the statute so literally, the 1935 amendment would permit credit for pervious service only where there was accomplished an actual transfer of reserves. The system, however, concedes that since 1935 it has construed, and at the present time it construes, the statute to require allowance of such credit to those who belonged to any system, whether or not allocated reserves are available for transfer.

Never, until this litigation did the system claim, at least with respect to plaintiff, that one who did not belong to any system was not entitled to previous service credit, by paying out of his own funds, the equivalent to the system's actuarial reserve for such previous service. The system now argues that it has no way of computing such reserves — this, although in 1953, and again in 1957, it advised plaintiff of his time credit for previous service and stated an amount required from him.

---

*As an appendix, there is added so much of the applicable statute as is pertinent, together with the amendatory provision indicated by emphasis.

Indeed, prior to this litigation the dispute was not whether plaintiff was entitled to previous service credit, but, rather, how much he was obliged to pay for such credit, and whether he was obliged to surrender his right to return of his contribution if he later withdrew from the system. There is still dispute whether in fact the system has, in the past, granted such credits for previous service to other new members who had never belonged to any retirement system.

Coming directly to the statute, the nub of the problem is the meaning to be given the clause " only to the extent that reserves sufficient to purchase credit for such previous service are transferred to the teachers' retirement system ". With respect to most systems in this State which allow previous service credit, the term " transfer " would refer exclusively to a transfer of reserves from one system to another (e.g., Retirement and Social Security Law, § 43). Such systems, however, confine the credit to service within the State or for the Federal Government, and there is appropriate provision for transfers of reserves, redeposit of such reserves, or for purchase of credit for previous service, or a combination of such payments to the system (e.g., Retirement and Social Security Law, § 41). But the moment one is concerned with a system, as the one here, which is designed to allow credit for all previous service, even outside the State, it becomes evident that the word " transfer " is hardly restricted to a transfer of reserves between systems (see Education Law, § 522, for a contrasting provision). It would be the rare, if not unique, out-of-State system which would provide at the present time for a transfer of reserves from it to a system in New York, for, in partial explanation, such reserves consist not only of the teacher's contributions but probably also of public funds appropriated to the purpose. Of course, the system has not adopted this impossible, because evidently futile, construction. Instead, it assumes that the word " transfer " includes a payment by the new member equal to the reserves in some other system which, but for the lack of an authorizing provision, could be transferred to the city system. This is logical enough, but it also emphasizes the fact that a narrow literal construction is not feasible and never has been followed, and is not now followed.

To advance the problem of construction a step further, the question may be posed whether there is any reason for making the right to purchase previous service credit depend upon prior membership in another system. The argument that only then is there a way to compute the reserves does not withstand analysis nor does it accord with the language of the statute.

Without elaborating the argument, suffice it to say that it assumes a computation of previous service credit based not on the service itself but on the amount transferable from another system. The statute, however, indicates that the actual length of service should form the basis for credit, and the amount of reserves available for payment into the system merely provides a limit beyond which actual service may not be credited. Moreover, it should again be noted that the system did in fact compute an amount, in 1953 and again in 1957, required of this plaintiff to allow full credit for his previous service. How that was done in this case is not apparent from the record. It may be appropriate, upon the trial of the action, to inquire into the method used, and any other methods which might be suitable under the statute. When that is done, consideration may be given to whether any genuine obstacle exists in computing the terms under which previous service is allowed in the absence of membership in another retirement system.

It is thus evident that there is more to the interpretation of the statute than is argued by defendant system. It would be of moment to ascertain what has been done by the system under the statute for the past 26 years. On this record it is not clear, and is in dispute. It is now axiomatic that the practical construction given to a statute under which an administrative agency functions is entitled to great weight in the courts (1 N. Y. Jur., Administrative Law, §§ 88–92; McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 129; cf. *Matter of Mounting & Finishing Co.* v. *McGoldrick*, 294 N. Y. 104; *Red Hook Cold Stor. Co.* v. *Department of Labor*, 295 N. Y. 1, 9).

Moreover, in this particular context, administrative construction over such a long period bears heavily upon legislative satisfaction with such construction. For, it should be obvious, that if the system had followed a liberal construction, that is, liberal with respect to the contentions of plaintiff, then it is most unlikely that city teachers, or their not inarticulate organizations, or others would have sought to amend the statute. Of course, if the practical construction were narrower, then the argument would be equally forceful in the opposite direction, and in this respect would again reflect legislative and teacher acceptance of the statute as construed.

Of course, not every practical construction will control the effect of a statute. In order to sustain interpretation by practical construction a statute must contain language of sufficient scope, albeit of some ambiguity or, indeed, because of the very ambiguity. Also, violative practical construction will not avail

to undo constitutionally protected rights (cf. *Matter of Ayman* v. *Teachers' Retirement Bd.*, 9 N Y 2d 119).

The legislative history gives some, but nevertheless inconclusive, light on the statute's meaning. The primary purpose of the 1935 amendment was clear enough. It was supposed to remove the burden borne by the city in paying for previous service credit for new members without corresponding contribution by the new members or the other systems in which they had been members. The Honorable Herbert Brownell, Jr., later Attorney-General of the United States, then the Assemblyman sponsor of the bill which became chapter 693 of the Laws of 1935, described the purpose and some of the effect of the bill as follows: " If a teacher transfers from outside of the State, however, there is no requirement that she bring with her reserves or contributions from any other city or state system and the City of New York is required to give her credit for service up to but not exceeding fifteen years. If this bill becomes law, a teacher coming into the New York City system from outside of the State will be on a par with a teacher coming into the system from without [*sic*, within] the State, and the City will be put to no expense on account of teachers transferring from outside the State beyond those incurred for teachers transferring from within the State. It is estimated that the annual saving to the City of New York by this bill will be approximately $150,000.'' (Governor's Bill Jacket, L. 1935, ch. 693, N. Y. S. Library, Legis. Ref. Section.)

The system contends, in effect, that the amendment added a requirement of former participation in a retirement system covering the previous service. Yet nowhere in the legislative history is any suggestion made that the amendment had such effect.

Consequently, in the light of the language of the statute, the unclear picture revealed as to the actual practice of the system since 1935, and the limited purpose and effect disclosed in the legislative history, the ultimate construction of the statute should await proof upon the trial.

In the event plaintiff is entitled to the statutory construction which he urges, then another serious question is raised.

It will be recalled that starting in 1947 plaintiff sought information and a certificate as to the previous service for which he was entitled to credit. It is not clear that he was ready, able and willing to purchase such credit in 1947. It may be a little clearer with respect to the events in 1951, although even then plaintiff may not have made certain, or unqualified, what his

intentions were. By 1957, of course, there was no question but that plaintiff wished to purchase the service credit. The significance of these different dates is that, depending upon when plaintiff sought to purchase credit, the equivalent reserves to be paid in by him would be related to his then salary. He argues that when he asked for a certificate in 1947 he was entitled to an answer, and based upon that he should receive credit computed on the basis of his 1947 salary. Whether he is right or not depends upon whether there was an inexcusable delay by the system (cf. *Wilmerding* v. *Bonaschi,* 166 Misc. 140, 145 [SHIENTAG, J.], involving system delay and intervening changes in the statutes; see, also, *Matter of O'Brien* v. *New York State Teachers Retirement Bd.,* 215 App. Div. 220, affd. 244 N. Y. 530). Whether plaintiff is right also depends upon his having been ready, able and willing to purchase such credit. On the pleadings and admissions alone these questions, too, cannot be resolved.

In this connection, however, the system's position is correct that, under its resolution of 1952 in implementation of the statute, it may properly require new members who apply for previous service credit to purchase such credit at the current cost, meaning, as determined by attained salary when application is made for such purchase. While the statute assumes purchase of credit at entrance, and therefore, on the basis of salary at entrance, a member cannot complain if he is permitted to purchase credit at a later time, but on the basis of the salary then attained. (Notably, no one raises the question whether the system may allow the purchase of credit long after entrance into the system. The power is assumed to exist under the statute, and this too is a departure from a narrow literal reading of the statute.)

Accordingly, the order directing judgment in favor of defendant system should be modified, on the law, with costs to plaintiff-appellant, to deny such judgment, the judgment should be vacated, and the order should otherwise be affirmed insofar as it denied plaintiff's motion for judgment, and the proceedings remanded for trial.

## APPENDIX

The pertinent provisions of the Administrative Code of the City of New York, with emphasis indicating the 1935 amendment, are as follows:

" § B20–4.0 Credit for service and service certificates. a. In computing the length of service of a contributor for retirement purposes under the provisions of this title, full credit up

to the nearest number of years and months shall be given each contributor by the retirement board.

" 1. For all city-service; and

" 2. In the case of present-teachers for all teaching or supervisory service in schools and colleges not maintained by the city; and

" 3. In the case of new-entrants for all teaching or supervisory service not exceeding fifteen years, in schools and colleges not maintained by the city, *provided that for any such new-entrant who becomes a contributor for the first time after June thirtieth, nineteen hundred thirty-five, except as otherwise provided in this section, credit for service previous to becoming a contributor shall be given only to the extent that reserves sufficient to purchase credit for such previous service are transferred to the teachers' retirement system. Any special or general law, except section seventy-three of the civil service law, to the contrary notwithstanding, the amount of credit for such service to be allowed for retirement purposes in the retirement system shall be the amount of time determined by the actuary to be equivalent to the time which would have been rendered in city-service, had the reserves received on behalf of such new-entrant been paid into the retirement system under the salary schedule in which such new entrant begins service.*

" b. Under such rules and regulations as such board shall adopt, each teacher shall file with such board a detailed statement of all such service rendered by him. As soon as practicable thereafter, such board shall verify such statement as to prior-service and shall issue to each teacher a certificate certifying to the aggregate length of his prior-service. Such certificate shall be final and conclusive as to his prior-service unless thereafter modified by

" 1. Such board upon application by the teacher;".

(Administrative Code of City of New York, § B20–4.0, as enacted by L. 1937, ch. 929, derived from section 1092 of the Greater New York Charter, as last amd. by L. 1935, 693.)

BOTEIN, P. J., VALENTE, STEVENS and EAGER, JJ., concur.

Order entered on December 10, 1958 directing judgment in favor of defendant system unanimously modified, on the law, with costs to plaintiff-appellant, to deny such judgment, the judgment vacated, and the order otherwise affirmed insofar as it denied plaintiff's motion for judgment, and the proceedings remanded for trial. Settle order on notice.