RAYMOND MARTIN, Respondent, *v.* SIEGFRIED CONSTRUCTION Co., INC., Appellant, and BUFFALO STRUCTURAL STEEL CORP., Third-Party Defendant-Appellant.

Fourth Department, May 18, 1962.

*Weaver, Maghran & McCarthy* (*W. Donn McCarthy* of counsel), for appellant.

*Dudley, Stowe & Sawyer* (*Roy P. Ohlin* and *James S. Marvin* of counsel), for third-party defendant-appellant.

*Dixon, De Marie & Szymoniak* (*Anthony J. De Marie* of counsel), for respondent.

WILLIAMS, P. J.   The defendant has appealed from a judgment in favor of the plaintiff, an ironworker, rendered under a claimed violation of subdivision 4 of section 241 of the Labor Law.   The pertinent parts of that section and subdivision are:

" All contractors and owners, when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:

\* \* \*

" 4. If the floor beams are of iron or steel, the entire tier of iron or steel beams *on which the structural iron or steel work is being erected* shall be thoroughly planked over, except spaces reasonably required for proper construction of the iron or steel work, for raising or lowering of materials or for stairways and elevator shafts designated by the plans and specifications." (Italics added.)

The case was submitted to the jury solely on the question of whether subdivision 4 had been violated.

Before we comment on the facts, which are relatively simple, we might eliminate consideration of certain matters to show that our problem is concerned solely and only with the applicability of subdivision 4 of section 241. Before the charge of the Trial Justice the attorney for the plaintiff conceded that he had not established a cause of action based on common-law negligence; that he had no cause of action under section 240 of the Labor Law; and that the plaintiff's only possible cause of action would have to be founded or based upon subdivision 4 of section 241.

With all of this in mind, we now consider the facts. The plaintiff was employed by the Buffalo Structural Steel Corp., the steel construction subcontractor of the defendant. He was a member of what is known as a " raising gang ", which consisted of four men, two of whom worked with a crane and a crane operator on the ground while the other two, including plaintiff, worked on the steel frame or structure. At the time of the accident the plaintiff was working on the third-floor level, which was the " tier * * * of iron or steel beams on which the structural iron or steel work [was] being erected ". His work at that time consisted in setting crossbeams (floor beams) in position and temporarily bolting them to the connecting beams. On one occasion, when a crossbeam was being lifted by the crane so that it might be set in its proper place, he was standing on an outside horizontal beam which joined two outside vertical beams. As the crossbeam reached the third-floor level he reached out for it so that it could be placed in its proper position and, in doing so, he missed the beam and lost his balance. He fell outside of the structure but he was able to grasp the beam on which he had been standing, with one hand, and this diverted his body so that he fell through the inside of the structure and landed on a pile of dirt in the basement and was injured. There was no planking on the third floor where he was working or on either the first or second floors.

It should be borne in mind that he was placing the floor beams of the tier on which he was working and, at that time, there could have been no planks laid at or near the place where he was working because there were no floor beams to support them. Only after these floor beams had been laid and completely attached could planking have been possible at that particular place. Thus, there could have been no violation of subdivision 4 of section 241 for several reasons. First, as we have said, it was not possible to plank as there were no beams on which to

lay planks. Secondly, it is never necessary, under the statute, to plank "spaces reasonably required for proper construction of the iron or steel work". However, had it been possible to plank this space, the construction of the iron or steelwork could not have been completed thereafter because it is obvious that one cannot erect and set beams for a floor if such work is made impossible by planking.

In this relation the case of *Moran* v. *Rheinstein Constr. Co.* (10 A D 2d 976) is of interest. In that case plaintiff, a member of the steel erection crew, was standing on a beam when he was struck by a steel column being lifted by a crane. The court, in reversing judgment in favor of the plaintiff, said: "The weight of the evidence is to the effect that either beam No. 440 was installed shortly before the accident or that the sloping ramp beams immediately to the north of beam No. 440 [on which he was standing], but at a lower elevation therefrom, were installed during the morning of the accident. If beam No. 440 was erected shortly before the accident, as defendant claims, then a reasonable time had not elapsed to give it the opportunity to plank over. On the other hand, if beam No. 440 had been installed several days before the accident, as plaintiff claims, then the sloping ramp beams were installed on the morning of the accident. In such event the space occupied by the sloping ramp beams was reasonably required for proper construction because that work could not have been performed if the opening had been covered at the level of beam No. 440 and, hence, there was no violation of the statutory duty. (*Giorlando* v. *Stuyvesant Town Corp.*, 4 A D 2d 701.) "

In the *Giorlando* case a judgment in favor of the defendant was affirmed. The plaintiff, an employee of the general contractor, was injured when he fell through an unguarded incinerator opening in the floor of the building being constructed for defendant, the owner. The court said: "Defendant's liability is predicated solely on a violation of the duty to plank over the floor, allegedly imposed on it by subdivision 4 of section 241 of the Labor Law. Judgment unanimously affirmed, with costs. The uncontradicted proof in the record establishes that work was in progress in and around the opening through which plaintiff fell, and that the work could not have been performed if the opening had been covered. Under those circumstances, we are of the opinion that the statute did not require such opening to be covered and that there was, consequently, no violation of the statutory duty to provide safeguards."

In the present case the Trial Justice charged, in effect, that if the jury found a violation of subdivision 4 of section 241 of

the Labor Law, and proximate cause, then there should be a recovery and contributory negligence would be no defense. We have no quarrel with this statement in the abstract. In fact we so held in *Utica Mut. Ins. Co.* v. *Mancini & Sons* (9 A D 2d 116). However, the Trial Justice also read to the jury paragraph 7.2 of rule 23 of the Rules of the Board of Standards and Appeals (N. Y. Off. Comp. of Codes, Rules & Regulations [7th Supp.], p. 396) of the Department of Labor. That section reads: "Temporary flooring — skeleton steel construction in tiered buildings. *The entire erection* floor shall be solidly planked over and there shall be a floor not more than two stories below the tier of beams on which bolting, riveting, welding or painting of structural steel is being done. The planking shall be laid tight except for access openings, be secured fastened to the framework of the structure, and shall be of proper thickness to carry the working loads but shall not be less than two inches thick. Where erection is being done by means of a crane operating on the ground, a planked floor area shall be maintained *not more than two stories below, and directly under that portion of any tier of beams on which bolting, riveting, welding or painting of structural steel is being done.*" (Italics added.) As we have observed the Trial Justice had charged the doctrine of strict liability without regard to contributory negligence, if there was a violation of the statute and proximate cause; but he then asked the jury to consider also the rule above quoted and he instructed "that this has the force of law" and that it should be enforced [*sic*] by a contractor such as defendant unless there should be some conflict with the provisions of the statute. This was erroneous. The declaration in the forepart of the rule that it has the force and effect of law does not make it so, nor would a legislative declaration to that effect achieve that result. It is well established that the violation of such a rule does not establish negligence per se, but is simply some evidence of negligence which the jury could take into consideration, together with the other evidence in the case. (*Schumer* v. *Caplin*, 241 N. Y. 346; *Utica Mut. Ins. Co.* v. *Mancini & Sons, supra,* p. 118; *Vallina* v. *Wright & Kremers,* 7 A D 2d 101, 109.) The Trial Justice further said: "But if you feel that the Board of Standards and Appeals has in any way diluted or written down or attempted to write down the requirements of the State Statute, Section 241, sub-division 4, then you will enforce the statute and not this Building Code, or rather this Board of Standards and Appeals Code." Then again, after reviewing the statute, he said: "To contrast then, the Section of the Board of Standards and Appeals provision, that would require the planking not more than two stories below.

You will recall the statute says nothing about planking two stories below. It affirmatively states what is to be done. The Board rules would permit the planking not more than two stories below the area concerned." And he also charged: " I charge you that so far as the rules and regulations are promulgated pursuant to Section 241 of the Labor Law, those sections are simply designed to supplement and effectuate the legislative policy enunciated in the Labor Law itself." Further, " You will determine, based on my earlier charge whether the statutory obligation under the facts of the case required the defendant to plank the second floor or the first floor ". This charge not only told the jury, in effect, that if the rule " diluted " or wrote down the requirements of the statute, then the jury would enforce the statute. However, it is obvious that the rule required more than the statute, rather than to " dilute " the statutory requirements, and the effect of the charge was to instruct the jury that not only the statute but the rule should have been complied with and that the failure to comply with either gave rise to a cause of action upon which the plaintiff's contributory negligence, if any, would not prevent recovery.

It is clear that, when the Trial Justice spoke of planking the second floor or the first floor, he was talking about the rule and nothing but the rule, because there is nothing in the statute that has any reference to planking anywhere except upon the " tier * * * on which the structural iron or steel work is being erected." The courts have construed this expression to mean just what it says, namely the floor upon which the work is being done and not any other floor.

In *Olsommer* v. *Walker & Sons* (4 A D 2d 424, 430) we said: " The section has been construed to mean that ' upon the setting and bolting of the floor beams it became the duty of the employer to then floor over the whole space,' with the exceptions expressed in subdivision 4 of section 241 ".

*Drummond* v. *Norton Co.* (156 App. Div. 126) is a leading and often-cited case. There a judgment in favor of the plaintiff was affirmed because of the failure of the structural steel contractor to plank the floor on which he was working. The charge of the trial court, which was approved, contained this passage (pp. 130–131): " I charge you that this statute is a measure for the benefit of workmen engaged in steel construction such as Drummond was in this instance; that the words ' is being erected ' are words of identification and not of limitation; they do not limit the time when the planks must be put down, but they identify or designate the tier which is to be thoroughly planked over, as for example, the tier on which the iron work

is being erected in contradistinction to the tier on which the iron work has just been completed. If the view I take of this statute is right, it requires the contractor to thoroughly plank over the entire tier on which the structural steel work is being erected except the excepted places, as soon as practicable after the tier below is finished and before the men begin to face the perils of work thereon." Further, the trial court observed (p. 131): "Of course there is a period of time after the iron or steel beams are erected when they cannot be covered and when employees thereon are subject to risks of the employment which are open and obvious and do not proceed from any negligence of the employer or any failure of statutory duty but are inherent in the nature of the business itself. The men, for instance, who are laying the floor are subject to these risks."

In *Duggan* v. *National Constructors & Engineers* (223 App. Div. 163, 167), the court said: "Besides this section of the statute and of the ordinance each refers to the floors on which iron work is being erected, which in this case was the eighteenth to the twentieth floor, and, therefore, has no application." In that case, the plaintiff was descending from the 15th floor to the 14th floor when a ladder collapsed and he fell from the 15th floor to the 13th floor through an elevator shaft which was about 14 feet square.

It is readily apparent merely from the language of paragraph 7.2 of rule 23, as well as from the above-cited cases, that this rule creates duties and obligations on the part of the steel contractor in addition to those required by the statute. It cannot be claimed that this rule merely amplifies or interprets the statute, because it is completely at variance with it. The rule refers to a "floor not more than two stories below the tier of beams on which bolting, riveting, welding or painting of structural steel is being done" and again "a planked floor area shall be maintained not more than two stories below, and directly under that portion of any tier of beams on which bolting, riveting, welding or painting of structural steel is being done." Clearly, these provisions were enacted and promulgated for protection to iron and steelworkers and others in addition to the protection afforded by subdivision 4 of section 241. Incidentally this is one of a group of rules which were enacted under the statutory authority of sections 27-a, 28, 29 and 241 of the Labor Law. Subdivision 6 of section 241 provides that the Board of Standards and Appeals may make rules to provide for the protection of workmen in connection with construction of buildings, and that the contractors "shall comply therewith". Furthermore the statute says nothing about erection by means of a crane

operating on the ground, but the rule does. If it was intended that this rule would coincide and be coextensive with the obligations created by statute, there would be no point in its enactment.

Because of the errors in the charge, and because the plaintiff has failed to make out a case under subdivision 4 of section 241 of the Labor Law, the judgment should be reversed. It may be that if plaintiff is given a new trial and the case is properly presented under paragraph 7.2 of rule 23, a cause of action may be established. For this reason a new trial should be granted.

GOLDMAN, J. (concurring). I concur with the result reached by the majority because of the confusion created by that portion of the trial court's charge dealing with the legal effect of Rules of the Board of Standards and Appeals of the Department of Labor and subdivision 4 of section 241 of the Labor Law. As ably set forth in the prevailing opinion, and as previously stated by this court in *Utica Mut. Ins. Co.* v. *Mancini & Sons* (9 A D 2d 116) violation of the rule would be only evidence of negligence per se. Absent this error in the charge I would vote to affirm the judgment for the plaintiff.

I do not agree with the construction given by the majority to subdivision 4 of section 241. To so construe the statute would in my opinion make it meaningless and of no practical effect in construction situations like the one at bar.

It is undisputed that construction of the third floor had just commenced, that planking could not take place until after the floor beams had been put in place and that no planking had been done on the first or second floors where the laying of floor beams had been completed. This appeal raises the question of precisely when the duty to plank has its inception. The statute imposes the duty but is ambiguous in defining what is intended by " the entire tier of iron or steel beams on which the structural iron or steel work is being erected ". Unless the word " tier " is interpreted to mean the last floor on which the steel beams were installed there would never be any duty to plank, for once the floor beams were bolted in place work would begin on the next higher floor. The reasonableness and necessity for such a construction is demonstrated by what actually occurred in the case at bar. The simple fact is that if the second floor had been " thoroughly planked over ", the plaintiff would have landed on that floor and not in the basement. Support for this position is found in *Drummond* v. *Norton Co.* (156 App. Div. 126, 130–131) where the court wrote " that the words ' is being erected ' are words of identification and not of limitation ". In our case this would identify the second floor as the tier which should have

been " thoroughly planked ". The issue of timeliness of planking in respect to proximate causation would be a question for the jury. The appellants consider the issue of compliance with the statute as a matter of law. The operative facts do not permit that view. Both appellants argue that the first and second floors had been completed, and therefore there was no duty to plank; that the third floor had not been completed and therefore no duty to plank it. This line of reasoning would excuse the appellants from ever planking and thereby make the statute completely ineffective and inoperative at any time.

The incongruity of showing a custom which supposedly prevented any planking because the erection process, including bolting up, had not been completed and simultaneously arguing that it was uncontradicted that the ironwork had been completed at the first and second floors, is obvious. Either the erection process had not been completed so that planking could not be laid, pursuant to custom in the industry, or the first and second floors were completed. In either case, the jury was entitled to find that there should have been planking on at least one level, if the statute has any meaning whatsover. It has been expressly determined that subdivision 4 is not solely for the protection of laborers on lower floors but also for the protection of employees engaged in laying floor beams, as was the respondent (*Schramme v. Lewinson,* 126 App. Div. 279). The purpose of the legislation has been aptly stated by Judge CARDOZO in *Lyles* v. *Terry & Tench Co.* (227 N. Y. 361, 364) where he referred to the duty to plank thoroughly: " Whether this had been done, was a question for the jury. It is not enough to show that an experienced ironworker might be able to walk without harm upon a bridge made of two planks, or even of one, and this whether unobstructed or obstructed. He might be able to do the same though there were no planks at all, by following the iron framework. That does not mean that his path would be safe. The very purpose of the statute was to guard him from such dangers. The beams are not merely to be planked here and there. They are to be ' thoroughly ' planked. The worker, in going his way about his work, is to be offered more than a choice of dangers. He is to have a way that is free from danger, to the extent that thorough planking of open spaces will give assurance of protection ".

Construed according to the position asserted by the majority the statute provides that only the floor on which the steel is being erected must be planked over. Consonant with this interpretation, according to the appellants, if the steelwork on the first and second floors is completed any planking may be removed on those floors even though steelwork is being erected on the

third floor without planking. However, it is a cardinal rule of construction that statutes must be reasonably interpreted so as to effectuate the legislative will (50 Am. Jur., Statutes, § 223, p. 200). Surely it was never the legislative intent that the purpose of the statute could be thwarted by playing a game of semantics. On this record, whether there was thorough planking as required by the statute was a question for the jury (*Lyles* v. *Terry & Tench Co., supra*; *Employers' Liab. Assur. Corp.* v. *Post & McCord,* 286 N. Y. 254).

The litigation arising under section 241 has been considerable but many of the cases are not applicable here for they are concerned either with one of the express exceptions stated in subdivision 4 or with very distinguishable factual settings. This is not a case where an accident occurred near open spaces reasonably required to be left open for progress on the work, such as an incinerator opening (*Giorlando* v. *Stuyvesant Town Corp.,* 4 A D 2d 701), or an opening for sloping ramp beams (*Moran* v. *Rheinstein Constr. Co.,* 10 A D 2d 976, affd. 8 N Y 2d 1051), or an opening for a stairway (*Duggan* v. *National Constructors & Engineers,* 223 App. Div. 163). Neither is this a case where the alleged violation of the statute could not in any event be the proximate cause of the accident (*Ithaca Trust Co.* v. *Driscoll Bros. & Co.,* 169 App. Div. 377, affd. 220 N. Y. 617), nor where the construction had reached beyond the stage where subdivision 4 is applicable (*Olsommer* v. *Walker & Sons,* 4 A D 2d 424). Considerable support for the plaintiff's position is found in the *Olsommer* case where this court in commenting upon *Ithaca Trust Co.* v. *Driscoll Bros. & Co.* (*supra,* p. 430) wrote " but the Court of Appeals * * * indicated that a recovery might be predicated on the theory that the failure to plank over a lower floor had contributed to the injuries of a falling workman ".

The Labor Law should be construed liberally in an effort to apply its protection where the protection is needed (*Red Hook Cold Stor. Co.* v. *Department of Labor,* 295 N. Y. 1, 7). The primary purpose of legislation similar to subdivision 4 is to prevent accidents causing injuries (*Rufo* v. *Orlando,* 309 N. Y. 345). The first statutory enactment on this subject (L. 1885, ch. 314) is entitled " An Act for the Protection of Life and Limb " and that simple title succinctly reveals the purpose and intent of the legislation.

Stated simply and briefly, the evidence presented an issue of fact as to whether the proximate cause of the respondent's injuries was the appellants' failure to perform a nondelegable duty (*Zuco* v. *Funt,* 292 N. Y. 201). The verdict is neither against the weight of the evidence nor contrary to law.

HALPERN, J. (dissenting). I cannot accept the construction of subdivision 4 of section 241 of the Labor Law adopted by the majority of the court. I agree with the construction of that subdivision set forth in Justice GOLDMAN's concurring opinion, but I do not believe, as he does, that there were prejudicial errors in the court's charge with respect to the Rules of the Board of Standards and Appeals, and I therefore vote to affirm the judgment appealed from.

So far as the construction of the statute is concerned, it seems plain to me that the construction adopted by Justice GOLDMAN is the only reasonable one. It is the only one which carries out the legislative purpose to protect steelworkers, while engaged in the erection of upper floors, against the risk of falling through open floors below. Furthermore, it is the construction which is supported by the authorities in this State, by the administrative interpretation adopted by the Board of Standards and Appeals, and by the practice of the industry as testified to by the defendant's own expert upon the trial.

The statute says that " the entire tier of iron or steel beams on which the structural iron or steel work is being erected shall be thoroughly planked over " with certain exceptions not relevant here.

As I understand the construction of the statute adopted by the majority, it is this: the tier of iron or steel beams which " is being erected " is required to be planked over while it is in the process of erection, presumably in a piecemeal fashion as parts of the tier are completed, and when the whole tier is completed the planks may be removed. Planking in this manner serves no useful purpose in safeguarding the steelworkers on the job, since the need for protection arises when the men proceed to erect the vertical columns above the completed floor and to place in position and to connect up the beams which are to constitute the floor above. That is the time when the danger chiefly arises of a steelworker's falling through the completed floor, if it is unplanked, and according to the majority opinion, the planking may be removed just when that critical stage is reached. The answer may be made that the majority opinion deals only with the time when the planks are to be laid and does not authorize their removal when the floor is completed, but if the statute is construed in this way, it does not support the result reached by the majority. If the statute is construed as requiring the retention of the planks so long as steel erection work is being done above the completed, planked floor, the defendant was plainly guilty of

a violation of the statute, since the second floor of the building had been completed and there were no planks on it at the time when the third-floor work was being done by the plaintiff. As a matter of fact, under this construction of the statute, the statute would be more burdensome than it would be under the construction which Justice GOLDMAN and I adopt. Under our construction, there is no requirement of piecemeal planking of the floor which is in the process of erection while the work is being done; the requirement is that the completed floor be planked over after the work of building that floor is completed but before any additional steel erection work is commenced on or above it.

The majority opinion needlessly creates difficulties in the construction of the statute by insisting that the statute requires that the planking be laid in piecemeal fashion on the floor which is in the process of being erected. There is no difficulty whatever if the statute is construed as requiring the planking of a tier, after it has been completed, before further steel erecting work is commenced " on " that tier, that is, before vertical columns are erected on it and before beams are laid between the vertical columns and crossbeams are laid between the beams. This is the construction of the statute which has been adopted in the cases. (*Drummond* v. *Norton Co.*, 156 App. Div. 126, 132, affd. 213 N. Y. 670; *Zuco* v. *Funt*, 292 N. Y. 201, approving the reasoning of the dissenting opinion in the court below, 266 App. Div. 802; *Ithaca Trust Co.* v. *Driscoll Bros. & Co.*, 220 N. Y. 617; *Olsammer* v. *Walker & Sons*, 4 A D 2d 424, 430, affd. 4 N Y 2d 793.) Under this construction of the statute, the defendant violated the statute by failing to have the first or second floor planked before the men were set at work placing in position the beams which would constitute the third floor. (See, also, Penal Law, § 1277.)

The construction of the statute by the majority disregards the words " on which " in the statutory provision that the " entire tier " of steel beams " on which " the steel work is being erected shall be thoroughly planked over. The statute does not say that the steel work which " is being erected " shall be planked over. It says that the tier of beams " on which " the steelwork is being erected shall be planked over. The words " on which " in this context mean " on top of which " or " above which " or " upon or from which " additional steelwork is being erected. It should also be noted that the statute requires that " the entire tier " be thoroughly planked over. This necessarily

refers to a completed tier—not to the piecemeal planking of parts of the tier as it is being erected, with the right to remove the planks as soon as the "entire tier" is completed.

The Rules of the Board of Standards and Appeals dealing with steel construction work make the meaning of the statute perfectly plain.

The rules are a self-contained statement of all the obligations of contractors and owners in connection with the erection, repair and demolition of buildings (Industrial Code, rule No. 23, as adopted July 25, 1951; N. Y. Off. Comp. of Codes, Rules & Regulations [7th Supp.], pp. 389, 396). The rules in Bulletin No. 23 include two different kinds of rules: some of the rules are merely a restatement of the statutory provisions and others impose new and additional obligations. The rule with which we are here concerned is of the first type; it merely restates the statutory provision, in a clarified and somewhat elaborated form. Rule 23–7.2 provides that "[t]he entire erection floor shall be solidly planked over and there shall be a floor not more than two stories below the tier of beams on which bolting, riveting, welding or painting of structural steel is being done" and that "[w]here erection is being done by means of a crane operating on the ground, a planked floor area shall be maintained not more than two stories below, and directly under that portion of any tier of beams on which bolting, riveting, welding or painting of structural steel is being done." It will be noted that in the rule the board resolved the ambiguity in the language of the statute which has given rise to the present controversy. It clearly described (1) the work which is being erected as the "tier of beams on which bolting, riveting, welding or painting of structural steel is being done" and it described (2) the floor area which should be planked over as a floor "below" and "directly under" that tier.

In the rules, the board took cognizance of the fact that very often two stories of steelwork are erected on or from a single base floor; the board apparently saw no objection to this, and it construed the statute as permitting it. It therefore provided that the "planked floor area shall be maintained not more than two stories below" the steelwork which is in the process of erection. The statute was thus construed by the board as allowing two stories of steel to be erected "on" the tier which was required to be planked.

The industrial practice has followed this part of the construction of the statute. As the superintendent of the third-party

defendant testified, when called as an expert witness by the defendant:

" You bolt the second floor, bolt — you put the plank on the second floor. You bolt the third floor and the fourth, if the building is that high, and then you move the plank up to the fourth floor.

" Q. What happened to that third floor? You don't plank that third floor? A. No, never. Just every two floors.

" Q. You only plank every other floor? A. That is right."

It is recognized in the majority opinion that the rule required the planking of the second floor or, if that floor were left unplanked, the planking of the first floor, while the third floor was being erected. But, having emasculated the statute, the majority opinion comes to the conclusion that the obligation is a new one created by the rule and not one created by the statute. I cannot accept this view. The language of the statute is plainly susceptible of the construction given it by the board and that construction should be adopted by the court. Instead of first construing the statute to the point of virtual extinction, without the benefit of the light thrown upon it by the rule, and then treating the rule as the creation of a new obligation, the majority of the court should have accepted the rule as a binding administrative construction of the language of the statute. It is hornbook law that the construction of ambiguous terms of a statute by the administrative agency which is entrusted with the administration of the statute " is to be accepted by the courts ' if it has * * * a reasonable basis in law ' " (*Red Hook Cold Stor. Co.* v. *Department of Labor,* 295 N. Y. 1, 9).

It should be noted however, that the trial court submitted the issue of liability to the jury solely in terms of the statute and made no reference to the rule in that connection.

The reference to the rule crept into one part of the court's charge in a curious fashion, the understanding of which requires us to go back to the grounds advanced by the defendant for the dismissal of the complaint upon the trial. The defendant's counsel started with the premise that the statute was ambiguous and he noted that the rule clarified the statute by requiring planking of a floor below the place where " bolting, riveting, welding or painting of structural steel " was being done. But he presented as an expert witness the superintendent of the third-party defendant, and he advanced through him a building trade definition of the word " bolting " as meaning only the permanent bolting of the steel beams after the initial erection work had been completed and the vertical columns had been

checked to make sure that they were perfectly straight. It is undisputed that the erection of the section of the building involved in this case had not yet reached that stage. The plaintiff and his fellow worker were engaged in putting the beams in place and fastening them by temporary bolts, at the time when the accident took place. The defendant's expert witness, and the defendant's counsel, did not, upon the trial, advance any contention that the duty of planking related to the tier which was in the process of erection or bolting; they recognized that it was the floor below (or two floors below) which the contractor was required to plank, but they advanced the theory, based upon the alleged trade definition of the word " bolting ", that the time for planking had not yet arrived in this case. The defendant's theory would leave the steelworkers without protection throughout the process of the initial erection of the steel structure and would protect only the workers who were engaged in the permanent bolting operation after the initial erection of all the steelwork had been completed. This strained interpretation of the obligation, of course, finds no support in the statute or in the rule; the defendant's effort to limit the obligation in this way rested solely upon its claim of an alleged trade definition never approved by the Legislature or by the Board of Standards and Appeals. The defendant has abandoned that argument upon this appeal; there is no mention of it in the briefs before us.

However, the argument outlined above, made at the trial level and now abandoned, explains why it was that upon the trial, it was the defendant which insisted on bringing the rule into the case. The defendant sought, by means of the rule, construed in accordance with its trade definition, to limit the scope of the statute or, as the court put it, to " dilute " the statute and to exclude from the scope of its protection the steelworkers who were engaged in the process of erecting the steel beams and temporarily fastening them in place. Despite the fact that the Judge had rejected the argument of defendant's counsel on the motion to dismiss, the defendant's counsel reiterated it in his summation to the jury. To avoid the possibility of the jury's being misled by the argument, the court apparently felt compelled to deal with it in its charge. It therefore read the rule to the jury and explained to the jury that if the jury found that the rule was in conflict with the statute it was to pay no attention to the rule; that the rule could not " dilute " the obligation of the defendant under the statute. The court's charge on the subject of the rule dealt primarily with the rejection of the defendant's contention. The court properly pointed out that,

in view of the mandatory terms of the statute, the rule could be considered only to the extent that it clarified and " effectuated " the statute.

When the Judge's charge is read against this background, it is evident that there was no error of any kind in the court's reference to the rule. The defendant certainly may not now be heard to complain of the fact that the court referred to the rule in its charge. It will be noted that the plaintiff's counsel took vigorous exception to the court's mention of the rule, reiterating his position that he stood solely upon the statute. The trial court accepted this position of the plaintiff and never deviated in its charge from the proposition that the only question before the jury for its determination was whether there had been a violation of the statute and that the jury was to bring in a verdict of no cause of action if it found that the statute had not been violated. There is no suggestion in the court's charge that there was a possible interpretation of the rule which would add to the statutory obligation of the defendant and, of course, there is no suggestion in the charge that the jury could find the defendant liable for violation of the rule even though it found that there was no violation of the statute.

The court repeatedly told the jury that the " critical question " was whether subdivision 4 of section 241 of the Labor Law had been violated and it repeatedly referred to the " statutory requirements " and the " statutory obligations ". Upon the conclusion of its main charge, in response to an exception, the court again told the jury: " The statute will control the situation."

From the foregoing, it will readily be seen that there was no error in the trial court's charge that contributory negligence could not defeat a recovery by the plaintiff in this case. Since the jury was allowed to find a verdict for the plaintiff only on the ground of a violation of the statute, no question ever arose as to the law with respect to contributory negligence in an action based upon a violation of a rule in the absence of a violation of a statute.

The opinions of the Court of Appeals and of this court in recent years have made it very clear that the plaintiff's contributory negligence may bar a recovery in any case in which recovery is sought for a violation of a rule, as distinguished from a violation of a statute. This distinction was drawn, however, in cases which involved rules adopted by the board under the authority of the general rule-making power given to the board by sections 27-a, 28 and 29 of the Labor Law, or by subdivision 6 of section 241. The board has the power, under those statutes,

to adopt rules which do more than clarify or effectuate a statutory command; the board may by rule, within the limits of its statutory authority, impose new or additional obligations. Rules of this character have been adopted under the authority of subdivision 6 of section 241. That subdivision "contains no substantive requirements or prohibitions". In that respect it is to be sharply differentiated from the first five subdivisions (including subdivision 4 which is involved in this case) which "contain substantive provisions". (*Utica Mut. Ins. Co.* v. *Mancini & Sons,* 9 A D 2d 116, 118, 117.) Subdivision 6 consists solely of a delegation of rule-making power to the board. The rules involved in *Utica Mut. Ins. Co.* v. *Mancini & Sons* (*supra*) and in *Vallina* v. *Wright & Kremers* (7 A D 2d 101) cited in the majority opinion, were rules adopted by the board under subdivision 6, creating new obligations and having no statutory counterpart. This is also true of the rules involved in *Conte* v. *Large Scale Development Co.* (10 A D 2d 255, mod. on other grounds 10 N Y 2d 20). The rules considered in *Major* v. *Waverly* (7 N Y 2d 332) were of a similar character. They were promulgated by the State Building Code Commission under the authority of the Executive Law, and adopted by the Village of Mamaroneck. The statute itself did not contain any substantive provisions. The substantive obligations were imposed for the first time by the code. In that situation, the court held that the plaintiff's case rested upon a violation of the code and not a violation of the statute, and hence that the violation was only evidence of negligence and contributory negligence on the plaintiff's part would bar a recovery.

The situation is entirely different, however, where the statute imposes a substantive obligation and the rule merely restates the obligation and, where necessary, removes ambiguities in the statute and clarifies it. Rule 23–7.2 here involved is of that type. In such a case, the rule may be considered by the court and the jury as an aid in construing the substantive provisions of the statute. The action is, however, still an action for the violation of the statute and, if the statute is of the type which imposes an absolute duty for the benefit of a particular class, an action for a violation of the statute by a member of the class so protected is maintainable without regard to negligence and it cannot be defeated on the ground of contributory negligence. (*Schmidt* v. *Merchants Desp. Transp. Co.,* 270 N. Y. 287, 306.)

As has already been pointed out, the court's charge in this case made it clear to the jury that the plaintiff's case rested solely upon the charge of a violation of the statute and not upon the charge of the violation of any rule.

Therefore, I conclude that there was no error in the charge of the court submitting the case to the jury. The evidence amply sustained the jury's verdict and I therefore vote to affirm the judgment entered thereon.

BASTOW and MCCLUSKY, JJ., concur with WILLIAMS, P. J.,; GOLDMAN, J., concurs in result, in opinion; HALPERN, J., dissents and votes to affirm in opinion.

Judgment reversed on the law and facts, without costs of this appeal to any party, and a new trial granted.