Scileppi, J. (dissenting).
I vote to reverse and to reinstate the determination of Special Term for the reasons stated in the dissenting opinion below and in the opinion at Special Term. I merely add the following to further amplify my position.
Section 2807 of the Public Health Law, as amended (L. 1969, ch. 957), when read with section 254 of the Insurance Law requires the Superintendent of Insurance to obtain a certification from the Commissioner of Health prior to the approval of hos *307 pital rates. Respondents argue, however, that the failure to obtain such certification in no way precludes the Superintendent from approving subscriber rate increases pursuant to the power granted him by section 255 (subd. 2) of the Insurance Law. I cannot agree. While it is true that there is no express statutory mandate requiring certification as a prerequisite to an increase in subscriber rates, it is clear that such was the legislative intent (Red Hook Cold Stor. Co. v. Department of Labor, 295 N. Y. 1,7).
Under subdivision 2 of section 255 of the Insurance Law, the Superintendent is given the power to grant or deny proposed subscriber rate increases on the basis of whether or not the proposed rates are “ excessive, inadequate or unfairly discriminatory ”. Now if the Superintendent is precluded from determining hospital rates prior to the Commissioner’s certification (Public Health Law, § 2807; Insurance Law, § 254) and AHS’ principal cost of operation is hospital reimbursement,* how can the Superintendent ever determine the excessiveness of a proposed rate increase prior to certification? The answer is simply that he cannot.
As was stated in Matter of Thaler v. Stern (44 Misc 2d 278, 286), the case involving the last AHS "temporary ’ ’ rate increase: ‘ ‘ There would be no need for subscriber rate increases were it not for two factors: firstly, there has been a significant increase in utilization of hospital services by AHS subscribers and secondly, and more importantly, there has been a tremendous increase in the reimbursable cost of hospital services.” (Emphasis added.)
Even assuming, however, that the Superintendent was not statutorily precluded from granting a rate increase prior to certification, it is my opinion that the Superinendent’s determination was nevertheless arbitrary.
Everyone agrees that the Superintendent acted properly in taking emergency measures to maintain AHS’ statutory solvency. On remand from Special Term, however, the Superintendent determined that an increase of 33% would suffice to achieve that end. The question necessarily raised is upon what basis could the Superintendent project an additional increase *308 of 10.3% through 1970. Special Term determined that there was no rational basis and limited the temporary increase (33%) to 30 days after the Commissioner certified the new reimbursement formula. In reversing Special Term the Appellate Division concluded that the mere fact that Special Term determined that the projected period was too long could hardly be viewed as an abuse of discretion. The majority then proceeded to espouse the oft-stated rule that a reviewing court “ may not substitute its judgment for that exercised, if properly done, by the administrative agency”.
This cáse, however, does not involve a mere disagreement with an administrative agency as to the propriety of a hasty determination. In such a situation, notwithstanding the fact that, with the benefit of hindsight, a more reasonable result might have been achieved had the determination been postponed to a future date, the rule that the court may not substitute its judgment for that of the agency would apply. In the instant case, however, there was no rational basis at all to support the Superintendent’s determination.
As originally enacted, section 2807 only required that hospital costs be “ reasonably related to the costs of providing [hospital] service ”. ■ This language allowed AHS to pay hospitals on the basis of their actual costs. In amending section 2807 the Legislature sought to do away with the cost-plus reimbursement formula and substitute a statutory standard requiring the Commissioner to certify only those hospital costs that were “ reasonably related to the costs of efficient production ” of the hospital (L. 1969, ch. 957). The legislative intent was clear: to reduce the skyrocketing hospital costs which would enure to the benefit of the subscribers. The Superintendent, however, made his projected rate increase of 43.3% through 1970 not on the basis of the new formula (effective Jan. 1,1970) but rather on the basis of the cost-plus reimbursement formula which becomes obsolete on December 31, 1969.
In support of that determination, the majority opinion takes the position that: ‘ ‘ Under the circumstances, it was permissible, indeed essential, for the Superintendent to estimate such payments, basing his determination, as the record clearly demonstrates he did, upon reasonable cost projections.”
*309 What is overlooked is that it was impossible for the Superintendent to make a “ reasonable cost projection ” for 1970 since the rates of reimbursement under the new formula were not available at the time he made his determination.
In conclusion, I would merely add that the primary reason for the emergency measures taken by the Superintendent was to maintain the statutory solvency of AHS. This end was clearly accomplished by Special Term and no contention has been made that solvency would in any way be jeopardized if the judgment of Special Term be reinstated. The absence of any other cogent reason why we should sustain this clearly arbitrary determination leads me to conclude that the order of the Appellate Division should be reversed and the judgment of Special Term reinstated.
Judges Burke, Bergan and Gibson concur with Chief Judge Fuld ; Judge Scileppi dissents and votes to reverse and reinstate the judgment of Special Term in a separate opinion in which Judges Bkeitel and Jasen concur.
Order affirmed.

 AHS’ breakdown of its cost of operation is approximately 94% for hospital reimbursement and 6% for overhead.