KATHRYN ... KER, Appellant, *v.* CHARLES B. SCHLEYER and Others,
Respondents.

Fourth Department, November 5, 1931.

*Luther Ira Webster*, for the appellant.

*Harold P. Burke*, for the respondents.

TAYLOR, J. Under the stipulated facts upon which this case was tried it appears that plaintiff rented from defendants Schleyer a building in Rochester for five years, commencing November 1, 1924. Plaintiff occupied during the full term. Under an agreement executed by said parties and the defendant Union Trust Company of Rochester plaintiff deposited with the trust company $10,000 as collateral security for the faithful performance of the lease. Included among the obligations covered by the deposit was the obligation of plaintiff " to pay all carrying and maintenance charges on said premises, including taxes, assessments, water rents, insurance, upkeep, heating, lighting, etc." During the leasehold term the street abutting on these premises was widened and improved and a portion of the expense in the amount of $4,561.43 was assessed and levied against the premises. The assessment was confirmed and became a lien July 26, 1927, but it was payable as follows: " One-tenth of the amount assessed due September 1, 1927, and one-tenth of the amount assessed on September 1st in each succeeding year, to and including September 1, 1936." Interest was due on all installments remaining unpaid after September 1, 1927. Plaintiff paid the annual installments due during the term of her lease, viz., those of 1927, 1928 and 1929. She then demanded return of her $10,000, with interest. Defendants Schleyer claimed she was liable for the seven installments to become due, and this litigation is for the purpose of determining the rights and obligations of the parties. The learned trial court decided that the plaintiff should pay the seven installments due after 1929.

The question here narrows down to the precise obligation assumed by the tenant under the lease; in other words, to the meaning of the word " assessments " as used and understood by the parties.

If the lease had provided that the tenant should deliver back the premises at the end of the term free and clear of incumbrances, there would be no doubt that the tenant would be liable to pay this assessment. Or, if the lease had stipulated that the tenant

was to pay all taxes and assessments without qualification, judgment would go for the landlord. (*Post* v. *Kearney*, 2 N. Y. 394; *Bleecker* v. *Ballou*, 3 Wend. 263.) But this tenant did not agree to pay all taxes and assessments. She agreed to pay all carrying and maintenance charges. The word "including" in the lease, immediately after the words "carrying and maintenance charges," was evidently intended to specify some of the "charges" contemplated and to limit the liability of the tenant to such assessments as were in the nature of carrying and maintenance charges. The word "assessments," standing alone, might aptly describe two different kinds of charges, (1) temporary or seasonal levies, and (2) levies for permanent improvement of property. Bearing in mind the preceding words, we are aided in determining the meaning of this word in the clause in question by having regard to the meaning of its associated words "taxes, * * * water rents, insurance, upkeep, heating, lighting, etc." "Assessments" is *ejusdem generis*. *Noscitur a sociis*. These accompanying words do not connote permanency. They refer to obligations recurring at annual, seasonable or other frequent intervals — current expenses.

Paving and widening a street is a betterment of abutting realty, a permanent improvement. (*Chamberlin* v. *Gleason*, 163 N. Y. 214; *Peltz . Learned*, 70 App. Div. 312.) The general assessment involved in the case at bar is, therefore, for a permanent improvement. The cost of this improvement became a lien upon the premises July 26, 1927, and might all have been paid September 1, 1927. It may be arguable that since this levy was entirely for a permanent improvement plaintiff was not obligated to pay any part of it, seven tenths falling due during her term. The fact that she has chosen to pay installments so falling due may be regarded as nothing more than an indication of willingness to consider such installments as current expenses since they were due each September first, a contribution volunteered because of enjoyment of the improvements furnished. However — meeting this argument — the stipulation of facts further states that any past due installment unpaid on the next succeeding first of March is to be added to the city tax for that year, thereby becoming a "tax," one of the specifying words found in the lease. This might indicate that amounts due annually on this assessment for even a permanent improvement should still be placed in the same class as taxes.

The general rule is that municipal assessments for permanent improvements are apportionable between a life tenant and remainderman according to the circumstances of the case and their respective interests in the property. (*Thomas* v. *Evans*, 105 N. Y. 601; *Peck . Sherwood*, 56 id. 615.) It has also been held that

a will providing that a wife, as a life tenant, should pay all the taxes assessed against the premises, does not cast upon her the obligation of paying the principal of an assessment laid for street paving in front of the premises. (*Chamberlin* v. *Gleason, supra.*) Plaintiff and defendants Schleyer are in a relationship akin to that of life tenant and remaindermen. Giving consideration to the whole clause under consideration, we are of the opinion that the word " assessments " is in the same category as the word " taxes," that as a " carrying and maintenance charge " it is binding and operative upon plaintiff only to the extent of the improvement charges falling due annually during the term of the lease, and that the judgment appealed from should be modified by reducing plaintiff's liability as there found in the sum of $3,132.98, plus interest thereon, and by directing defendant Union Trust Company of Rochester to pay the last-mentioned amount to plaintiff. (*Rhode Island Hospital Trust Co.* v. *Babbitt,* 22 R. I. 113.)

Certain conclusions of law are disapproved and reversed and new conclusions made.

All concur. Present — Sears, P. J., Taylor, Edgcomb, Thompson and Crosby, JJ.

Judgment so far as appealed from modified on the law by increasing plaintiff's recovery by the sum of $3,132.98, with interest, and as so modified affirmed, with costs to the appellant against the defendants Schleyer. Certain conclusions of law disapproved and new conclusions made.