Benjamin Brenner, J.
This is a negligence suit in which plaintiff received a jury verdict based, essentially, on the owner’s and hospital’s failure to install and maintain handrails along the steps in the vestibule entrance. The defendants ask reconsideration of their motion to set aside the verdict and for resolution of the third-party suit which, by stipulation was left to the court.
The defendants’ major complaint is that it was error to admit evidence concerning the hospital’s contract for the construction of the handrails prior to plaintiff’s injuries and their actual installation after the accident. This proof, I take it, the defendants believe was prejudicial and may have induced the jury’s finding of negligence.
There is no rule of evidence, known to me, which plainly renders inadmissible testimony of a repair or installation prior to an accidental injury. As to repair following an accident, it is, of course, familiar law that such evidence is inadmissible, except for the purpose of establishing the fact of control (Olivia v. Gouze, 285 App. Div. 762, affd. 1 N Y 2d 811).
Plaintiff sustained her injuries on October 7, 1962. A center railing along the stairs from which plaintiff fell was actually put in place thereafter. The hospital was built in 1927, at which time the approval plans called for the handrails. When the lobby of the hospital was renovated in 1961, the front part thereof, inclusive of the vestibule, was also modernized. At that time the approved plans for such renovation did not includethe installation of the handrails, although there was an extra item, subsequently ordered pursuant to the contract, for that installation. The old City Code of Ordinances required maintenance of such rails for buildings constructed prior to 1938 and the present City Administrative Code makes an almost identical provision for such rails in buildings constructed thereafter. It was not conclusively established upon trial whether or not there were prior accidents on or by the stairs in question im the 40-odd years of the hospital’s existence. Nor is it clear whether handrails of any kind were or were not ever in place until after plaintiff sustained her injuries.
If my view of the admissibility of the pre-accident agreement is sound, it must follow that the installation or repair made following the accident pursuant to that agreement is also admissible. True, I cautioned the jurors to ignore the evidence of the post-accident installation and plaintiff insists that it was not she who offered this proof. But the events concerning that installation both before and after plaintiff’s injuries pervaded the entire trial so that the cautionary instructions would have *656 had little impact upon the jurors’ deliberations. It is, in any case, my conviction that no error was committed.
The exclusionary rule as to post-accident repairs of the object causing injury is based on two sensible concepts. The first is that public policy favors the making of alterations and improvements and should not punish an owner who does so because of the threat that evidence thereof would be used against him in the event of accidental injury. (See 2 Wigmore, Evidence [3d ed.] § 283, p. 151, wherein he states “ the admission of such acts * * * would discourage all owners, even those who had been genuinely careful, from improving the place or thing that had caused the injury, because they would fear the evidential use of such acts to their disadvantage ”.) The second is that there is need for a rule protecting the owner who makes a post-accident repair precisely because, after an accident occurs, he is alterted to the possibility of further injury. According to this reasoning, the evidence of repair does not prove that the original condition was imperfect or unsafe or out of repair and only after an accident occurs may it for the first time become known that the danger is truly present (Corcoran v. Village of Peekskill, 108 N. Y. 151).
It is interesting to note that the public policy basis for the exclusionary rule is questionable for if it were the public policy to protect owners against proof- of repairs, it would persevere in that policy even where it is necessary to establish control. For an owner may be just as discouraged from making a repair by fear that evidence thereof would be used against him to show control as he would fear such evidence to show knowledge or negligence. If, then, the real basis for the exclusionary rule be that the owner deserves protection when he is truly alerted for the first time to the possibility of danger following accident and thus induced to make the repair to prevent further injury, that basis is wholly illogical and inapplicable to a situation where, as here, the owner contracted prior to the accident for that very repair. At that time intimation of danger could not have arisen because of an accident which had not yet occurred. On the other hand, the installation, as previously agreed upon, may have involved consciousness or awareness that there was indeed danger in the use of the steps without the handrails (2 Wigmore, Evidence [3d ed], § 282, p. 131), and this the jury was entitled to consider. An example of this type of pre-accident conduct indicating consciousness of danger is the precautions taken by the owner of an animal alleged to be vicious and thus admissible (Brice v. Bauer, 108 N. Y. 428).
*657 Nor is there any logic in excluding the actual installation made pursuant to contract following plaintiff’s injuries because of consideration of public policy, even if such policy were accepted as a true reason for the rule. It was the hospital’s claim that the rails were previously arranged for and subsequently installed as part of the renovation work in order to beautify the entrance steps in the lobby and to guard against a danger newly created by the placement of new lights and glass doors by the stairway. Quite apart from this significant admission of concern, which alone should justify a finding of foreseeable danger, the jury was asked to decide the true purposes of the arrangement for and actual installation of the handrails. It must be assumed that the jury found consciousness of danger to be the fact so that the disclosure of the installation after the accident was as necessary as the fact of the prior contract therefor to help determine that fact. Hence, to have applied the exclusionary rule under these circumstances, on the ground of public policy, would have been quite illogical.
The third-party suit by the owner and hospital against the contractor, Borris Breslow Corporation, is without merit. They assert that their negligence was passive only and that the contractor, in failing to erect the handrails, was actively so. Where, unlike the situation here, the parties in control of property fail to discover and remedy a dangerous condition affirmatively created by another, of which condition they have but constructive knowledge, such failures do constitute passive negligence, entitling them to recover against the creator of the condition (Jackson v. Associated, Dry Goods Corp., 13 N Y 2d 112). However, the dangerous condition in the instant case, i.e., the failure to provide for handrails along the stairs, was not the affirmative creation of that condition by the contractor. It thus cannot be said that the latter was actively negligent, even if we assume that the owner and hospital were passively so. Additionally, the owner and hospital in control having violated a nondelegable duty imposed by an ordinance or the Administrative Code, they are active tort-feasors and cannot recover over upon the theory of implied contractual indemnity (Good Neighbor Federation v. Pathe Inds., 202 Misc. 951, affd. 281 App. Div. 968; Storoz v. International Business Mach. Corp., 91 N. Y. S. 2d 573, affd. 276 App. Div. 1079).
The further claim for indemnity based on express contract relies on paragraph 30 of the contract which, in part, provides: “ The contractor shall indemnify and hold harmless the owner, its officers, agents, employees from and against all claims and demands, just and unjust, of third persons arising or alleged *658 to arise out of or in connection with the performance of the work hereunder * * ” I put aside the question of whether this provision of the contract would apply to the agreement to install the railings, which was not provided for in the original contract but by way of an additional work order after completion of all the items originally called for in the contract. The general rule is that an agreement will not be construed to indemnify a person unless such intention is unambiguously expressed therein (Inman v. Binghamton Housing Auth., 3 N Y 2d 137; Earle v. City of New York, 24 A D 2d 476). No clarity of purpose to indemnify can be spelled out in the agreement at hand for when the injuries occurred for which the defendants here are being held liable, the contractor had completed all the required work under the main contract and was not actually present in or working at the premises. Indeed, it had not returned to the renovation site at the hospital for several months so that it can hardly be said that the claim arose ‘ ‘ out of or in connection with the performance of the work ” (Inman v. Binghamton Housing Auth., supra, p. 147).
Recovery over is also urged on the ground of breach of contract. First, it is argued that while the original contract did not call for the installation of the railings, they were agreed upon as an extra item of work in May of 1962 and that failure of the contractor to install them until October of 1962, after the accident, constituted an unreasonable delay of performance and thus a breach of contract. Hence, the argument goes, the judgment which the plaintiff has recovered may be said to have reasonably flowed from such breach. Yet the agreement to install the railings made no provision whatever for time of performance. Moreover, since discussions continued as to the price and the details of the installation, I am satisfied that the contractor did not unreasonably delay in performing the work. I consequently find that there was no breach of contract.
Secondly, it is argued that the contractor was under obligation to maintain and carry insurance covering accident claims such as the one here involved. Paragraph 25 of the contract provides: “ The contractor shall maintain such insurance as will protect him from claims under workmen’s compensation acts and from any other claims for damages for personal injury including death, with [sic] may arise from operations under this contract, whether such operations are by himself or any subcontractor or anyone directly or indirectly employed by either of them.”
Paragraph 26 provides: ‘ 1 The contractor shall take out and maintain at his own expense Comprehensive General Liability Insurance, with a contractual Liability endorsement covering *659 the obligations assumed by the contractor, in not less than the following limits ’ ’.
As I read these provisions, they require only that the contractor maintain insurance to protect itself and not the third-party plaintiffs. Moreover, the required insurance covers claims that ‘ ‘ may arise from operations under this contract, ’ ’ and as has been previously indicated, the claim herein did not arise from any such operation.
The defendants’ motion to reconsider is granted and on such reconsideration, decision is adhered to relative to the jury verdict in favor of plaintiff. The third-party defendant, Borris Breslow Corporation, is entitled to judgment dismissing the third-party complaint.