Jasen, J.
Plaintiffs Lozaro Lopez and Eugene Sudlow were injured by a natural gas explosion in a manhole under construction pursuant to a contract between their employer, Peckham Road Corporation (Peckham) and the Consolidated Edison Company (Con Ed). The injured workmen instituted negligence actions against Con Ed. Rita Sudlow brought a derivative action against Con Ed, seeking damages for loss of her husband’s services. Con Ed commenced a third-party action against Peckham for full indemnification, basing its action on an indemnification provision in the contract between the parties. The issue of liability was tried separately and the jury returned a verdict in favor of the plaintiffs. The trial court, to whom resolution of the indemnification issue had been left, dismissed the third-party complaint. The Appellate Term, with one Justice dissenting, modified the judgment by adding to the interlocutory judgment a decretal paragraph dismissing the third-party complaint and affirmed the modified judgment. The Appellate Division affirmed, with four members of the court agreeing with the views expressed by the Appellate Term and the fifth member voting to reverse on the dissenting opinion at the Appellate Term. Leave to appeal to our court was granted upon a certified question: Was the order of the court below properly made?
The issue before us is a very narrow one. We are not asked to review the jury verdict rendered against Con Ed on the issue of liability to the plaintiffs in the main action. On appeal of that aspect of the case to the Appellate Term, the court found that there was sufficient evidence to sustain the verdict, and the issue was pursued no further. Nor does this case involve an apportionment of damages pursuant to the principles first enunciated in Dole v Dow Chem. Co. (30 NY2d 143). *607 Con Ed has chosen to rely entirely on the indemnity provisions contained within its contract with Peckham and the courts below have found that Peckham did not commit any acts of negligence that contributed to the accident and which would trigger the application of the indemnification clause in the contract. Thus, the sole issue for our consideration is whether there is sufficient evidence in the record to sustain this determination as a matter of law. We are of the view that there is substantial evidence to support the finding that Peckham did not act negligently with respect to its employees and we conclude, therefore, that the order of the Appellate Division should be affirmed and the certified question answered in the affirmative.
Peckham entered into a lump sum contract with Con Ed to furnish supervision, labor, materials and equipment necessary to excavate trenches and openings at specified locations in White Plains, New York, to install outside plant facilities to be furnished by Con Ed, and to backfill the excavations. In essence, Peckham was to install manholes, vaults and ducts necessary for the placement of underground electrical cables. The contract contained a number of general conditions, including a provision that the "Contractor expressly undertakes and agrees to provide and maintain at his own cost and expense adequate, safe and sufficient walkways, platforms, barricades, warning lights, scaffolds, ladders, runways for concrete carriers, hoists and all necessary and proper equipment, apparatus and appliances useful in carrying on the work and to make the place of work and the ways and approaches thereto safe and free from avoidable danger (Emphasis added.) This portion of the contract also contained a clause whereby the contractor agreed to "indemnify and save harmless the Company from and against any and all liability arising from injury to person or property occasioned wholly or in part by any act or omission of the Contractor, his agents, servants or employees”. (Emphasis added.)
The contract also contained a number of more detailed specifications. In a provision entitled "Scope of Work”, the contractor agreed to furnish all supervision, labor, materials and equipment necessary to excavate trenches; to backfill trenches and other openings; to unload, handle, job store and install precast concrete manholes and conduits; to install field constructed manholes and conduits; to unload, handle, job store, install and connect gas pipes and fittings to be furnished *608 by Con Ed; to transport gas pipe, conduit and other gas and electric materials that the company may order the contractor to transport; and to excavate pole and anchor holes. Although the contract indicated that the contractor was required to perform other work associated with "gas and electric installations”, it was specified that Con Ed "employees will insert and remove stoppers and make all connections to and disconnections from live gas mains.”
Pursuant to another contractual provision, Con Ed stationed an employee, Gus Navario, on the job site to supervise the work being conducted by Peckham and its employees. Eugene Sudlow was the assistant superintendent for Peckham and was responsible for a work crew of 12 employees. According to the testimony produced at the trial, in June, 1967, Sudlow and his work crew were engaged in the installation of a precast manhole vault on Main Street in White Plains. On June 7, a test hole, in essence a trench, was dug and the men discovered that a gas service pipe lay across the site of the proposed manhole excavation. Sudlow testified, over objection, that, in accordance with usual procedure, he notified Navario of the exposed pipe and Navario, in turn, called in a special work crew to close off the pipe. The Con Ed employees severed the service pipe from the gas main and sealed the main. The dead service pipe was removed and the Peckham employees resumed their work. The manhole excavation was completed on June 8 and Peckham installed the vault on the next day, a Friday. On Monday, Sudlow and his crew were to remove certain "knock outs” from the precast manhole vault. In the morning, Sudlow smelled gas in the vicinity where the service pipe had been removed. Navario allegedly stated, "there is no gas, you are crazy, they cut the pipe last week.” In the afternoon, before entering the vault, Sudlow conferred with Navario to ask about the gas and to confirm that the knock outs had been properly selected. Navario again stated, "sure, everything is okay, go right into the manhole—everything is checked out.” Sudlow and Lopez entered the manhole without first testing for the presence of gas. After a few blows with a crowbar at one of the knock outs, there was a spark and the manhole was consumed by a fire fed by gas. After the accident, Con Ed discovered a "slight leak” in the main pipe that, according to expert testimony, may have resulted from stress placed upon the main when the service pipe was disconnected.
We assume, although we need not decide, that the indem *609 nity provision in the contract is broad enough to require Peckham to indemnify Con Ed from damages occasioned by Con Ed’s own negligence. (See, e.g., Margolin v New York Life Ins. Co., 32 NY2d 149; Levine v Shell Oil Co., 28 NY2d 205.) Nevertheless, the indemnity clause, by its own terms, has no application unless there has been an "act or omission” by Peckham resulting in injury to persons or property. The sole claim lodged by Con Ed against Peckham is that Peckham did not test the manhole for the presence of gas before permitting its employees to enter it. We believe that, under the circumstances of this case, Peckham was under no duty to provide the technical machinery necessary to conduct tests for the presence of gas.
Con Ed places great reliance upon the provision in the general part of the contract obligating Peckham to provide all "necessary and proper equipment” and all apparatus and appliances that are "useful” in carrying out the work safely. On the other hand, the specifications contained later in the contract restrict this general clause by carefully setting forth the nature of the work to be performed by Peckham. Other specifications establish that any work done in connection with gas mains is to be closely supervised by Con Ed. Given the nature of the work to be performed by Peckham, which had nothing whatsoever to do with the placement or removal of gas mains, and the ambiguous nature of the terms "necessary and proper” and "useful”, parol evidence was properly admitted to clarify whether the parties intended to place the burden on Peckham to provide special equipment for the testing for the presence of gas. (See, e.g., Matter of Surrey Strathmore Corp. v Dollar Sav. Bank of N. Y., 36 NY2d 173, 176-177; Richardson, Evidence [10th ed], § 627, pp 624-626.)
The parol evidence established that, as a matter of custom and practice, Con Ed did all work relating to gas and gas mains and possessed the specialized equipment, known as a Davis Meter, necessary for testing for the presence of gas. Moreover, it was Con Ed’s practice to have its employees check for the presence of gas in manholes before the other employees resumed their work. A Con Ed employee testified that Con Ed had a group of specially trained personnel for dealing with gas line difficulties and that this group was specially equipped for handling gas-related emergencies. Plaintiff’s expert testified that all gas companies throughout the Nation employ Davis Meters for the testing of the presence of *610 gas. Finally, there was testimony that Peckham’s employees do not have any special training or equipment to handle gas-related difficulties.
We conclude that the responsibility for testing for the presence of gas was entirely Con Ed’s. It alone had the' experienced personnel and specialized equipment for handling gas-related difficulties. Notably, Con Ed, both in its contract and in its practice, reserved for itself the right and duty to perform gas line related work. Under the circumstances of this case, we conclude that the contractor was under no duty to provide gas testing equipment or to conduct tests for the presence of gas. Although Peckham may have assumed full responsibility for damages resulting from the work it was to perform, irrespective of any fault of Con Ed’s, Peckham certainly did not assume liability for work that it did not perform, particularly in a specialty for which it and its employees had no special training and no special equipment.
The order of the Appellate Division should be affirmed. The certified question is answered in the affirmative.
Chief Judge Breitel and Judges Jones and Cooke concur with Judge Jasen; Judges Gabrielli, Wachtler and Fuchs-berg dissent and vote to reverse on the dissenting memorandum by the late Mr. Justice Peter A. Quinn at the Appellate Term.
Order affirmed, with costs. Question certified answered in the affirmative.