■ SAUL S. SILVERMAN et al., Appellants, v RIKER-MAXSON CORP., Respondent. — Judgment of the Supreme Court, New York County (Dontzin, J.), entered November 16, 1981, which, *inter alia,* granted defendant's motion for summary judgment dismissing the amended complaint, reversed, on the law, without costs, and defendant's motion for summary judgment is denied. Appeal from the order of the Supreme Court, New York County (Dontzin, J.), entered October 14, 1981, is dismissed, without costs, as subsumed within said judgment. Plaintiffs Silverman and Kalnick are attorneys and accountants who are partners. Defendant Riker-Maxson Corp. is a publicly owned corporation that manufactures and sells electronic equipment. The amended complaint alleges that plaintiffs were granted rights under two separate contracts, each of which was signed by defendant on August 12, 1968. Under the first, the "Acquisition Agreement", Riker-Maxson's predecessor purchased the assets of J. F. D. Electronics from a religious corporation, Stratford Retreat House, in exchange for approximately 300,000 unregistered shares of Riker stock. The acquisition agreement provided that Stratford Retreat House would transfer some of the 300,000 shares to members of the Finkel family (who operated J. F. D for Stratford), and to the brokers who brought about the 1965 and 1968 transactions. The Acquisition Agreement also provided that the Stratford Retreat House and its immediate assignees could compel the registration of those shares at certain times and under certain conditions. Under the second agreement (the Guarantee), Riker promised the seller, Stratford, and others receiving shares directly from the seller, including any brokers who brought about the sale, that when the stock was sold, Riker would guarantee a minimum of $45 per share. The plaintiffs' amended complaint alleging four causes of action, is basically premised on two contentions: (1) that the plaintiffs were brokers in the 1968 transaction; and (2) that they were guaranteed the price of $45 per share for 9,662 shares issued to them. Special Term found that

the Acquisition Agreement is clear and unambiguous and the brokers are only those specifically named in paragraph 9 of the Acquisition Agreement, which does not specify the plaintiffs. Special Term concluded that parol evidence seeking to substantiate plaintiff Kalnick's participation as a broker in this matter, could not therefore be considered. It granted summary judgment to defendant. Parol evidence is admissible to supply omissions or explain ambiguities in the writing (*Long Is. Trust Co. v International Inst. for Packaging Educ.*, 38 NY2d 493, 497-498; *67 Wall St. Co. v Franklin Nat. Bank*, 37 NY2d 245, 248-249). The miasma which obscures the precise nature of the relationship between the two agreements as well as the transaction itself warrants the receipt of extrinsic evidence to explain whether the plaintiffs were among the intended recipients of the registration privilege and the guarantee of the price of the shares. Among other issues to be resolved are the cross claims of estoppel, the nature of plaintiffs' assignment of shares from Stratford, and the content of the assurances from defendant Riker which allegedly induced plaintiffs to withdraw their shares from registration. Concur — Carro and Asch, JJ.; Sandler, J. P., concurs in a memorandum and Bloom, J., dissents on the opinion of Dontzin, J., at Special Term.

Sandler, J. P. (concurring). I am in agreement with the conclusion reached in the majority memorandum, and for the reasons set forth. However, one aspect of the underlying transaction seems to me to merit additional comment. A critical issue presented, and one that may ultimately prove decisive, is whether the listing of brokers in what appears to be a boiler plate clause of the Acquisition Agreement providing for mutual indemnification against potential suits by brokers is reasonably construed as limiting the right of Stratford Retreat House, the seller, to transfer shares of stock received for the sale of the business to someone not so listed who had in fact contributed to the bringing about of the transaction. In the usual situation it would be doubtful, as Special Term understandably found, for the same word, "broker", to be used in different senses in separate parts of an agreement. But this may not be the usual situation. It is difficult to discern in the several agreements, or in any of the surrounding circumstances to the extent to which these were developed at Special Term, any suggestion that it was a matter of concern to respondent buyer to whom the seller allocated the shares of stock which it was to receive. Significantly, the amount of shares that it was to transfer to others was not set forth in the agreement, nor was there any effort to prescribe the proportions that were to go to those to whom the seller deemed itself obligated. It thus seems improbable that the identity of the recipients was a matter of any interest to the buyer or in any way contributed to the fixing of the purchase price. On the face of it, the very large value of the shares of stock that the seller agreed to transfer to the plaintiffs is compelling evidence that the plaintiffs were indeed recognized by the seller as having contributed significantly to the transaction. If this analysis is correct, the result reached at Special Term represents an unbargained-for windfall to the buyer. In effect, the buyer will pay less for the business than it agreed to pay, and for a reason that in no way affected the determination of the purchase price. It may be, of course, that further factual development will disclose a reason not apparent on this record for the contracting parties to have excluded the plaintiffs from those entitled to receive shares of stock. Absent evidence of such a reason, a strong basis appears for the conclusion that the listing of brokers in the indemnification clause was not intended to limit the seller's right to transfer shares to others who in fact contributed to the bringing about of the transaction.