717 F.2d 747
 14 Fed. R. Evid. Serv. 254
 SCHIAVONE CONSTRUCTION COMPANY, INC., and Edward B.
Fitzpatrick, Jr., Associates, Inc., A Joint
Venture, Plaintiffs-Appellees, Cross-Appellants,
v.
COUNTY OF NASSAU and Gibson & Cushman Dredging Corp.,
Defendants-Appellees,
County of Nassau, Defendant-Appellant, Cross-Appellee,
Gibson & Cushman Dredging Corp., Defendant-Appellee.
COUNTY OF NASSAU, Defendant and Third-Party
Plaintiff-Appellant, Cross-Appellee,
v.
CONSOER, TOWNSEND & ASSOCIATES, Third-Party Defendant and
Defendant-Appellant, Cross-Appellee.
 Nos. 1448, 1449 and 1451, Dockets 83-7024, 83-7110 and 83-7112.
 United States Court of Appeals,
Second Circuit.
 Argued June 16, 1983.
Decided Sept. 20, 1983.
 
 Robert O. Boyhan, Deputy County Atty., Mineola, N.Y. (Edward G. McCabe, County Atty., Mineola, N.Y., on the brief), for defendant-appellant, cross-appellee and defendant third-party plaintiff-appellant cross-appellee county of Nassau.
 Leslie F. Ruff, New York City (Hart & Hume and Maryellen Chomsky, New York City, of counsel), for third-party defendant and defendant-appellant, cross-appellee Consoer, Townsend & Associates.
 Robert A. Kennedy, Garden City, N.Y. (Colleran, O'Hara, Kennedy & Mills, P.C., and David Westermann, Jr., Garden City, N.Y., of counsel), for plaintiffs-appellees and cross-appellants Schiavone Const. Co., Inc. and Edward B. Fitzpatrick, Jr., Associates, Inc.
 Stanley J. Norton, Goshen, N.Y. (Norton & Christensen and Harold J. Gabriel, Goshen, N.Y., of counsel), for defendant-appellee Gibson & Cushman Dredging Corp.
 Before VAN GRAAFEILAND, PIERCE and WISDOM,* Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 This litigation arises out of the failure of a sewerage pipeline constructed by a joint venture, Schiavone Construction Co. and its wholly owned subsidiary Edward B. Fitzpatrick, Jr. Associates, Inc. (Schiavone) under a contract awarded in 1971 by the County of Nassau. The pipeline ran from a waste treatment plant in Wantagh, Long Island to a point in the Atlantic Ocean four miles offshore. It was designed for the County by Consoer, Townsend & Associates, Inc. (Consoer), a Chicago engineering firm. Gibson & Cushman Dredging Corp. (Gibson), a subcontractor, did the dredging for the installation.
 
 
 2
 The County began to use the pipeline in January, 1974, although there had not been a formal and final acceptance of the project. Shortly thereafter, a break occurred in the line, requiring extensive repair work which was performed under protest by Schiavone. When the County refused to pay Schiavone contract retainage which the County had withheld, or to reimburse Schiavone for the cost of the repair work, litigation was commenced in the United States District Court for the Eastern District of New York. Schiavone sued the County and Gibson. The County counterclaimed for liquidated damages based on delay. Gibson counterclaimed for withheld retainage and for dredging necessitated by the repair work. The County impleaded, and also brought an independent, but subsequently consolidated, action against, Consoer, which, in turn, counterclaimed for indemnification or contribution. Both Consoer and the County cross-claimed against Gibson.
 
 
 3
 The trial was bifurcated, and the issues of liability were tried before Judge Pratt and a jury. Consoer's and the County's cross-claims against Gibson were dismissed on motion before trial. The jury's verdict, which was elicited by Special Interrogatories, was that the pipe broke because of inadequate design, plans, or specifications and not because of improper means or method of construction, but that Consoer was not negligent in preparing the inadequate design, plans, or specifications.
 
 
 4
 The damage issues then were disposed of by either summary judgment or a trial before a magistrate, and judgment was entered on January 13, 1983, which:
 
 
 5
 1. Dismissed all claims against Gibson and awarded Gibson $1,000,386.67, plus interest, on its counterclaim against Schiavone.
 
 
 6
 2. Awarded Schiavone $1,382,620.35, plus interest, on its claims against the County, dismissed all other claims against the County, and dismissed the County's claims against Schiavone.
 
 
 7
 3. Awarded the County $1,755,236.70, plus interest and litigation costs, against Consoer.
 
 
 8
 Schiavone, Consoer and the County have appealed. We affirm the judgment in all respects, except as to the award in favor of the County and against Consoer, which we vacate, remanding the County's claim for further proceedings.
 
 
 9
 Except as addressed to the award which we vacate, appellants' arguments require only brief discussion. Although there was serious disagreement as to why the pipeline broke, Schiavone contended that the break was caused by the use of improper backfill material. When the pipeline contract first was put out for bids, the specifications provided that materials excavated or dredged in navigable channels should be deposited in a "Spoil" area and replaced with suitable materials which did not contain organic materials or silts. The only bid received on the original offering was rejected as too high. The County then revised certain of the specifications in an apparent effort to reduce costs. The revised specifications provided, among other things, that material excavated for the sewer line might be used as backfill. Schiavone argued that this material should not have been used because it was not suitable for the purpose, and introduced testimony in support of its claim. The County disputed Schiavone's theory as to the cause of the break with expert testimony of its own. It was for the jury to determine whose testimony was more believable, and we are not prepared to say that the jury reached a seriously erroneous result. See Bevevino v. Saydjari, 574 F.2d 676, 683-87 (2d Cir.1978).
 
 
 10
 The district court did not abuse its broad discretion in admitting evidence concerning the superseded specifications, because the evidence was relevant to the litigated issues and its probative value was not outweighed by the danger that it would be unfairly prejudicial. See United States v. Birney, 686 F.2d 102, 106-08 (2d Cir.1982). Likewise, in view of the testimony of defense experts concerning the use of excavated material as backfill, the district court did not err in admitting evidence in this contract action that the County directed the use of other "select" materials in connection with the pipeline repairs, this being evidence in the nature of impeachment. See Patrick v. South Cent. Bell Tel. Co., 641 F.2d 1192, 1196-97 (6th Cir. 1980).
 
 
 11
 We find no merit in the contentions of Consoer and the County that they were harmed prejudicially by the language of the district court's first interrogatory to the jury, which was, "Did the pipe break because of inadequate design, plans, or specifications?" They assert that the court erred in refusing the request of Consoer's counsel that the court ask whether the break occurred "only because of inadequate plans, specifications, or design and for no other reason." In response to counsels' expressions of concern, the district court instructed the jurors that, if they were "unable to determine that the break was caused by any of the factors listed in the questions," the cost of the repairs would fall on Schiavone. Because the matter was covered adequately in the district court's instructions, the court did not err in refusing to elaborate thereon in its interrogatories. See Perzinski v. Chevron Chem. Co., 503 F.2d 654, 659-60 (7th Cir.1974).
 
 
 12
 For the reasons set forth in Judge Pratt's Memorandum and Order of June 3, 1982, we agree that the repair work performed by Schiavone constituted "extra work" within the meaning of the contract and that, therefore, Schiavone should be reimbursed in accordance with the terms of the contract rather than on a theory of quantum meruit.
 
 
 13
 This brings us to the County's award against Consoer, which required the interpretation of an indemnity clause in the engineering contract. Because of inherent ambiguity in this clause, we believe that the district court erred in holding as a matter of law that it imposed absolute liability upon Consoer for all expenses incurred as a result of the broken pipeline.
 
 The Indemnity Clause
 
 14
 Paragraph 4 of the "General Provisions" of the engineering contract provides:
 
 
 15
 The Engineers agree that in the performance of its services hereunder, they will comply with any and all applicable provisions of the Labor Law of the State of New York. Further, the Engineers agree that they will be responsible for and save the County harmless from all claims, damages, costs and expenses arising from the use of any patented articles in connection with the work and also arising from the performance of the work of the Engineers including damages to persons or property and the defense, settlement or satisfaction of such claims.
 
 
 16
 After the County rested its case and before Consoer began its proof, the district judge, without ruling, stated that he didn't think this provision was "specific enough in its language to indicate an intent on the part of the parties to include the kind of situation we are dealing with here as being within the scope of the indemnification." He continued:
 
 
 17
 With respect to the breach of contract claim, I don't think that the contract provisions that Mr. Carney pointed out to me are of the special nature that I understand the New York cases are to require in a contractor's professional services in order to take the case out of the rule which says that the standard contract performance of a professional is that he will exercise the reasonable care expected of similar people in the profession.
 
 
 18
 I don't think there is any special result that is called for. There is no special time provision. It doesn't seem to fall in the group of these cases that would permit you to sue an engineer or other professional for breach of contract as opposed to what is a negligence type standard.
 
 
 19
 At the close of all the evidence, Consoer moved to dismiss the County's contract claims for indemnity, and the district court granted its motion.
 
 
 20
 However, when the County later moved for judgment n.o.v., the district judge changed his mind. Although the jury had found Consoer free of negligence, the court held Consoer contractually liable to the County for a sum substantially in excess of $2 million. It did so by focusing on only that portion of the indemnification agreement which provides that the engineers will "be responsible for and save the County harmless from all claims, damages, costs, and expenses ... arising from the performance of the work of the Engineers", and finding this language to be "clear". We need not decide whether these excerpted provisions, standing alone, are "clear" evidence of an undertaking by Consoer to subject itself to the broad, all-inclusive liability imposed upon it by the district court. The excerpted provisions do not stand alone.
 
 
 21
 The indemnity clause provides first that Consoer "will be responsible for and save the County harmless from all claims, damages, costs, and expenses arising from the use of any patented articles in connection with the work ...." No legitimate argument could be made that "claims, damages, costs, and expenses", as there used, refers to anything other than direct liability to a third person. The words obviously do not refer to damage to the pipeline itself.
 
 
 22
 The County's argument that, when the clause "and also arising from the performance of the work of the Engineers" is added to the foregoing language, the words "claims, damages, costs, and expenses" take on a different meaning and include damages to the County's own pipeline, seems to be refuted by the clause "including damages to persons or property and the defense, settlement or satisfaction of such claims." (Emphasis supplied). One does not defend, settle or satisfy damages to his own property.
 
 
 23
 Although the word "including" may be interpreted as adding something to a clause that otherwise would not be incorporated therein, Red Hook Cold Storage Co. v. Department of Labor of the State of New York, 295 N.Y. 1, 8, 64 N.E.2d 265 (1945), it also may be read to encompass the entire subject matter of the clause which it modifies. Baker v. Schleyer, 233 A.D. 584, 586-87, 253 N.Y.S. 351 (1931), aff'd, 260 N.Y. 673, 184 N.E. 140 (1932); Schauf v. City of New York, 23 Misc.2d 585, 586-87, 198 N.Y.S.2d 435 (1960). Here, a logical argument can be made that the words "including damages to persons or property and the defense, settlement or satisfaction of such claims" encompass all of Consoer's liability "arising from the performance" of its work, and that they insure the County only for injury to, or damage to the property of, third persons. It is against that type of loss that indemnity agreements generally are designed to protect. Indeed, every case cited by the County, in which indemnity was awarded, involved third party liability. Consoer's indemnity undertaking would be harmoniously logical if it were interpreted to include only damages to the "persons or property" of others than the County and the "defense, settlement or satisfaction" of their resultant claims. Moreover, such liability accurately could be said to arise from the "performance" of Consoer's work. See Inman v. Binghamton Hous. Auth., 3 N.Y.2d 137, 147, 164 N.Y.S.2d 699, 143 N.E.2d 895 (1957); Priolo v. Lefferts Gen. Hosp., Inc., 54 Misc.2d 654, 658, 283 N.Y.S.2d 203 (1967).
 
 
 24
 In emphasizing the merit of the district court's first interpretation of the indemnity clause, we do not insist that this interpretation should have been adhered to. Our purpose, instead, is to show that there is sufficient ambiguity in the language of paragraph 4 to require the exploration by parol evidence of the parties' intent. "An indemnity clause must reflect the unmistakable intent of the parties as to the scope of its coverage." Redding v. Gulf Oil Corp., 38 A.D.2d 850, 851, 330 N.Y.S.2d 158 (1972); see Ruhland v. John W. Cowper Co., 72 A.D.2d 907 (1979), aff'd, 52 N.Y.2d 756, 436 N.Y.S.2d 277, 417 N.E.2d 571 (1980). Where the language of such a clause is ambiguous, parol evidence is admissible to clarify the parties' intent. Lopez v. Consolidated Edison Co., 40 N.Y.2d 605, 609, 389 N.Y.S.2d 295, 357 N.E.2d 951 (1976); O'Neil Supply Co. v. Petroleum Heat & Power Co., 280 N.Y. 50, 55-56, 19 N.E.2d 676 (1939).
 
 
 25
 Consoer says that it is prepared to present evidence that the broad indemnification obligation imposed upon it by the district court was not within the intent of the parties. Although, as the County argues, Consoer did not seek to offer such evidence during the trial, this well may have been due to the district court's original statement of belief that there was no liability under the indemnity agreement. In view of the fact that the district judge did not change his mind until after the trial on liability had concluded, we believe that, in the interests of justice, the intent of the parties should be fully explored with the help of parol evidence. This evidence need not be directed to paragraph 11(g) of the contract, which the district court correctly found to be clear and unambiguous and which merely provides that Consoer must do certain work under the contract.
 
 
 26
 The judgment of the district court is affirmed except as to the award in favor of the County and against Consoer based on paragraph 4 of the General Provisions of the Engineering contract. This portion of the judgment is vacated, and the issues of indemnification arising out of paragraph 4 are remanded to the district court in order that the intent of the parties may be ascertained with the help of pertinent parol evidence. Because Judge Pratt is now a member of this Court, the Chief Judge of the Eastern District may assign the matter to another judge.
 
 
 
 *
 Senior Circuit Judge of the Fifth Circuit, sitting by designation