The STRATFORD GROUP, LTD., DPF Asset Management Corp., and DPF Computer Leasing Corporation, Plaintiffs,

v.

INTERSTATE BAKERIES CORPORATION and Foster Bam, Defendants.

No. 84 Civ. 1476 (RWS).

United States District Court, S.D. New York.

July 10, 1984.

Proskauer, Rose, Goetz & Mendelsohn, New York City (Stephen Rackow Kaye, Bruce E. Fader, Eileen Reinhardt, Bradley I. Ruskin, New York City, of counsel), for plaintiffs.

Kramer, Levin, Nessen, Kamin & Frankel, New York City (Thomas H. Moreland, Joseph A. Greenaway, Donald J. Olenick, New York City, of counsel), for defendants.

## OPINION

SWEET, District Judge.

On January 31, 1984, The Stratford Group, Ltd., DPF Asset Management Corp. and DPF Computer Leasing Corporation (collectively "Stratford") commenced an action (the "Stratford action") against Interstate Bakeries Corporation ("Interstate") and Foster Bam ("Bam"), a director of Interstate, in New York Supreme Court, alleging breach of fiduciary duty, breach of contract, fraudulent misrepresentation, inducing breach of contract and *prima facie* tort. Stratford seeks more than $20,000,000 in damages. On March 1, 1984, Interstate commenced an action (the "Interstate action") in this court against Stratford and directors and stockholders of Stratford, seeking to foreclose on certain assets. On the same day, Interstate removed the Stratford action to this court. Because the two cases arise out of the same transaction, the two cases were consolidated on May 9, 1984.

Interstate and Bam have moved pursuant to Fed.R.Civ.P. 12(b)(6) and 56 to dismiss all claims in the complaint filed in the Stratford action for failure to state a claim upon which relief may be granted or for summary judgment dismissing those claims. For the following reasons, the motion of Interstate and Bam will be granted in part and denied in part. The first claim in the Stratford action will be dismissed to the extent it asserts a claim against Interstate for breach of fiduciary duty. The third and fourth claims, which are asserted against Bam for inducing breach of contract and *prima facie* tort, will be dismissed.

## Facts

Defendant Interstate, formerly DPF Incorporated, is a Delaware corporation with its principal offices in Kansas City, Missouri. Defendant Bam has been a director of Interstate since 1974. Until the fall of 1981, Interstate was engaged in two principal businesses, baking and purchasing and leasing computers. Interstate's Computer Leasing Division (the "Division") was managed for many years by the four principals of the plaintiffs in this action, Jerome H. Naftol ("Naftol"), Anthony Pintauro, I. Martin Goldstein and Kenneth J. Endick (collectively "the Management Group").

In 1981, Interstate decided to withdraw from the computer leasing business. In June 1981, Interstate and the Management Group commenced negotiations with respect to a transfer of the Division to the Management Group. The Management Group formed The Stratford Group, Ltd., a holding company, in which the members of the Management Group were sole stockholders. In addition, they formed two wholly-owned subsidiaries of The Stratford Group, Ltd., DPF Asset Management Corp. ("Management Corp.") and DPF Computer Leasing Corporation ("Leasing Co.").

On September 1, 1981, Interstate and Management Corp. entered into a Purchase and Sale Agreement (the "Agreement") which transferred a substantial portion of the Division to Management Corp. In turn, Management Corp. assumed substantially all of the Division's liabilities, including a loan for $22,400,000 from First National Bank of Boston and Continental Illinois Bank & Trust Company of Chicago. Interstate guaranteed payment of the bank debt and remained contingently liable for other liabilities of the Division. Paragraph 17(a) of the Agreement provided, in pertinent part:

This writing constitutes the entire agreement of the parties with respect to the subject matter hereof and may not be modified, amended or terminated except by a written agreement specifically referring to this Agreement signed by all the parties hereto; ...

Included in the subject matter of the Agreement were specific financial commitments made by Interstate to Management Corp.

Under the terms of the Agreement, Interstate was granted an option through December 31, 1983 to acquire 15% of Management Corp.'s stock for $50,000. In addition, Interstate retained Management Corp., pursuant to an equipment management agreement, to manage certain assets not sold under the Agreement, principally equipment and leases insured by Lloyds of London. Leasing Co., which was formed for the purpose of engaging in new computer leasing business, was not a party to the Agreement. Under the terms of an indemnification agreement, however, Leasing Co. was obligated to pay Interstate a maximum of $4,000,000 in reimbursement, reduced to $2,000,000 if Interstate elected to pursue its foreclosure remedy, if Management Corp. defaulted on the assumed debt or breached any other obligation.

The Agreement became binding on the parties, subject to fulfillment of specified conditions precedent, on September 25, 1981. The transaction closed on October 1, 1981. In October 1983, Stratford defaulted on the bank debt, and the parties commenced this litigation.

## Discussion

Stratford contends that the transaction between Interstate and the Management Group in 1981 was not simply a purchase and sale but rather a complex joint venture arrangement by which Interstate transferred a substantial portion of its computer leasing portfolio and related debt to Management Corp. Stratford maintains that the Agreement was not intended to provide all the rights and obligations of the parties with specificity and, because of the interdependent, ongoing relationship contemplated by the transaction and certain promises and undertakings allegedly made by Interstate, negotiations did not conclude on October 1, 1981 when the transaction closed.

Stratford also asserts that Interstate, through its officers, directors and agents,

assured members of the Management Group that Interstate would satisfy future requests for financial and other assistance, consistent with the Agreement's purposes. Stratford alleges that such representations were made with the knowledge and intention that the Management Group would rely on them and that but for those representations the Management Group would not have entered into the Agreement. For example, Stratford alleges that in order for Leasing Co. to succeed, it needed "equity-portion financing" to bridge the months between purchase of equipment and resale to investors. When The First National Bank of Boston and Continental Illinois Bank of Chicago informed the Management Group that they would not provide the anticipated $5,000,000 line of credit, Naftol spoke to Bertram J. Cohn ("Cohn"), then Chairman of the Board and Chief Executive Officer of Interstate, and requested a modification of the Agreement which had been signed but not closed. Cohn allegedly persuaded Naftol to close despite the banks' unwillingness to provide financing, assuring Naftol that Interstate would assist Leasing Co. with respect to the needed financing.

Interstate contends, on the other hand, that the terms of the Agreement demonstrate that no joint venture was created. It also argues that Stratford can show no justifiable reliance on any alleged oral assurances because the Agreement explicitly states in its merger clause that it "constitutes the entire agreement between the parties with respect to the subject matter hereof." Agreement ¶ 17(a). According to Interstate, the Agreement addresses in detail the subject matter of the alleged oral assurances. Furthermore, the Agreement expressly denies any representations and precludes oral modifications. Agreement ¶¶ 10 & 17(a). Finally, Interstate and Bam argue that Stratford's tort claims against Bam must fail because the Stratford cannot show that Bam was motivated solely by malice or personal profit or that he engaged in tortious conduct separate from his conduct as a director.

### Breach of contract and breach of fiduciary duty

In the first cause of action, Stratford alleges breach of contract and breach of fiduciary duty. Among other things, Stratford alleges that Arthur Kramer ("Kramer"), a director of Interstate, assured the Management Group that the previous personal difficulties between Bam and Naftol would not interfere with the relationship between Interstate and Stratford and that B.J. Hinkel ("Hinkel"), Vice Chairman of the Board and Chief Financial Officer of Interstate, Cohn and Kramer all assured the Management Group that Interstate would satisfy future requests for financial and other assistance, consistent with the Agreement purposes.

The breach of fiduciary duty claim is based on Stratford's contention that the 1981 transaction was in fact a joint venture. A joint venture exists where

the parties have so joined their property, interests, skills and risks that for the purpose of the particular adventure their respective contributions have become as one and the commingled property and interests of the parties have thereby been made subject to each of the associates on the trust and inducement that each would act for their joint benefit

. . . .

*Steinbeck v. Gerosa,* 4 N.Y.2d 302, 317, 175 N.Y.S.2d 1, 13, 151 N.E.2d 170, 178 (1958) (quoting *Hasday v. Barocas,* 10 Misc.2d 22, 28, 115 N.Y.S.2d 209, 215 (Sup.Ct.N.Y.Co. 1952)). In particular, there must be (1) a combination of resources, skills and property, (2) a sharing of profits, and (3) a sharing of management control between the venturers. *See, e.g., Chromalloy American Corp. v. Universal Housing Systems of America, Inc.,* 495 F.Supp. 544, 549 (S.D.N.Y.1980), *aff'd,* 697 F.2d 289 (2d Cir. 1982); *Allen Chase & Co. v. White, Weld & Co.,* 311 F.Supp. 1253, 1260 (S.D.N.Y. 1970); *Steinbeck v. Gerosa, supra,* 175 N.Y.S.2d at 13, 151 N.E.2d at 178. In determining whether a joint venture exists, this court has stated:

The crucial factors to be considered are the intent of the parties, express or implied, whether there was joint control and management of the business, whether there was sharing of profits and losses, and whether there was a combination of property, skill or knowledge.

*Sherrier v. Richard,* 564 F.Supp. 448, 457 (S.D.N.Y.1983).

■ Stratford argues that the Agreement contemplated a joint contribution and a continuing, on-going relationship among the parties to achieve "inextricably intertwined" goals. Although Interstate had an interest in Management Corp.'s profitability—its success would reduce the debt for which Interstate was contingently liable—such an interest, alone, is not enough to constitute a joint venture. "It is not enough that two parties have agreed together to act in concert to achieve some stated economic objective. Such agreement, by itself, creates no more than a contractual obligation, otherwise every stockholders' agreement would give rise to a joint venture." *Hasday v. Barocas,* 10 Misc.2d 22, 28, 115 N.Y.S.2d 209, 216 (Sup. Ct.N.Y.Co.1952).

There was no sharing of profits or joint control of property contemplated by the 1981 transaction. Interstate had an option to purchase 15% of Management Corp.'s stock, which it did not exercise, but this did not constitute a right to share in its profits. Even if Interstate had exercised the option and become a stockholder of Management Corp., stockholders are not joint venturers, notwithstanding their common interest in the corporation's success. *See Weisman v. Awnair Corp.,* 3 N.Y.2d 444, 449, 165 N.Y. S.2d 745, 750, 144 N.E.2d 415, 418 (1957).

Interstate also had no control or management of the assets of Management Corp. The control deemed essential for a joint venture is power over decision-making. *See, e.g., Allen Chase and Co. v. White, Weld & Co., supra,* 311 F.Supp. at 1260 ("Perhaps, the most important criterion of a joint venture is the joint control or management of the joint property used in accomplishing its aims.") *See also Riley v.*

*Maran,* 82 Misc.2d 702, 370 N.Y.S.2d 302 (Sup.Ct.N.Y.Co.1974) (joint venturers "entitled to joint management of the enterprise" and neither may "impose his solution to a new circumstance on the other").

Paragraph 40 of the Verified Complaint alleges that "[p]laintiffs were required to report their financial condition regularly to [Interstate], which they did, and, in addition, reviewed many other aspects of the business operations with [Interstate]." The Agreement imposed certain restrictions on the conduct of Management Corp.'s business and required it to submit financial reports to Interstate. It also permitted Interstate to examine Management Corp.'s books. These restrictions, however, were no more stringent than those imposed by banks on corporate debtors. Such common precautions imposed to safeguard a loan or other financial obligation do not give rise to a fiduciary duty. *See Martin v. Peyton,* 246 N.Y. 213, 158 N.E. 77 (1939). Moreover, Stratford admits that it had control of Management Corp. on a day to day basis and in the ordinary course of business. Naftol Affidavit ¶ 69.

Leasing Co., a separate corporate entity, was insulated with minor exception, from any responsibility for the payment of the assumed debt, which was solely Management Corp.'s obligation. Accordingly, Interstate had no economic interest in the success of Leasing Co., except to the very limited extent to which, under the terms of the Agreement, Interstate could look to Leasing Co. to pay a small portion of the assumed debt. Moreover, Interstate had no control over Leasing Co.'s operations, except approval of certain sale and leaseback transactions which Interstate was obligated to guarantee under ¶ 8(h) of the Agreement. This is insufficient to meet the joint venture test for control, the right to direct and control the affairs of the venture. *See, e.g., Allen Chase & Co. v. White, Weld & Co., supra,* 311 F.Supp. at 1260.

Stratford has failed to show that the elements of a joint venture are present here. There was no specific provision in

the Agreement for the sharing of the profits of the alleged joint enterprise. *See, e.g., Marathon Motors, Inc. v. Atlas Buick Co.,* 150 N.Y.S.2d 289 (Sup.Ct. Kings Co. 1956); *Poppenberg v. Reliable Maintenance Corp.,* 89 A.D.2d 791, 453 N.Y.S.2d 519 (4th Dep't.1982); *Hasday v. Barocas,* 10 Misc.2d 22, 115 N.Y.S.2d 209 (Sup.Ct.N.Y. Co.1952) (the absence of the right to share in profits established conclusively that there was no joint venture). Moreover, Interstate had no control over the day to day management of Management Corp. and exercised virtually no restrictions on Leasing Co. except with respect to the sale-leaseback transactions guaranteed by Interstate. Finally, in addition to the text of the Agreement, the parties' public statements with respect to the transaction and the failure of either side to use the term "joint venture" prior to October 1983 indicate that the intent of the parties was not to create a joint venture but rather an arms-length purchase and sale. In fact, the equipment management agreement between Interstate (then DPF Incorporated) and Management Corp. expressly negated the creation of a joint venture. Accordingly, the first cause of action, insofar as it alleges a breach of fiduciary duty, is dismissed.

Stratford also alleges breach of contract in its first cause of action, claiming that Interstate failed to provide promised financial assistance. It rests this claim upon the alleged oral assurances and paragraphs 17(g) and 17(e) of the Agreement which provided:

> After the Closing, each party hereto shall cooperate, shall take such further action and shall execute and deliver such further documents as may be reasonably requested by any other party in order to carry out the provisions and purposes of this Agreement.

Agreement, ¶ 17(g).

> At any time and from time to time after the Closing, at Purchaser's request and without further consideration, Seller will execute and deliver such other instruments of sale, transfer, conveyance, as-

signment and confirmation and take such action as Purchaser may reasonably deem necessary or desirable in order to more effectively transfer, convey and assign to Purchaser, and to confirm Purchaser's title to, all of the Sold Assets, to put Purchaser in actual possession and operating control thereof and to assist Purchaser in exercising all rights with respect thereto.

Agreement, ¶ 17(e).

■ While the parol evidence rule precludes evidence of prior or contemporaneous negotiations between the parties to contradict or modify the terms of the writing, *see, e.g., Marine Midland Bank v. Thurlow,* 53 N.Y.2d 381, 387, 442 N.Y.S.2d 417, 419, 425 N.E.2d 805, 807 (1981). Stratford is entitled to endeavor to prove at trial that the assistance they sought was "reasonably requested ... in order to carry out the purposes of th[e] Agreement," and was necessary to assist them in exercising all rights with respect to the transferred computer portfolio.

■ Since the Agreement's purposes are not set forth in the document, parol evidence is admissible to show those purposes. "[T]he parol evidence rule is not violated when the oral evidence does not alter or vary the writing or insert an additional term, but simply explains the meaning of a term or illuminates the consideration." *Bird v. Computer Technology, Inc.,* 364 F.Supp. 1336, 1343 (S.D.N.Y.1973); *see Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 896 (2d Cir.1976) ("The essential tool in properly interpreting a contract is to first ascertain the intent of the parties .... Unless the intent is unambiguous from the four corners of the documents, extrinsic evidence of the parties' intent should be received."); *Perma Research & Development Co. v. Singer Co.,* 308 F.Supp. 743, 748–50 (S.D.N.Y.1970); *Lopez v. Consolidated Edison Co.,* 40 N.Y.2d 605, 389 N.Y. S.2d 295, 357 N.E.2d 951 (1976) (parol evidence properly admitted to clarify meaning of clause requiring party to provide all "necessary and proper equipment"); *Silverman v. Riker-Maxson Corp.,* 91 A.D.2d

524, 525, 456 N.Y.S.2d 775, 776 (1st Dep't. 1982) ("Parol evidence is admissible to supply omissions or explain ambiguities in the writing."); *Epstein v. Paganne*, 44 A.D.2d 520, 353 N.Y.S.2d 190, (1st Dep't.1974) (trial court erred in refusing evidence of meaning of clause requiring defendant sales agency to "use its best efforts and energy in representing [plaintiff]").

Accordingly, Interstate's motion for summary judgment on the breach of contract claim is denied.

### Negligent or Fraudulent Misrepresentation

■ Interstate argues that Stratford's second cause of action, which alleges common law fraud and negligent misrepresentation based on representations allegedly made by Interstate concerning future financial assistance and cooperation, fails because Stratford cannot show reasonable reliance. Whether or not reliance was justifiable is ordinarily a question of fact to be determined by the trier of fact on all of the facts and circumstances proven at trial. *E.g., Angerosa v. White Co.*, 248 A.D. 425, 432, 290 N.Y.S. 204 (1936), *aff'd*, 275 N.Y. 524, 11 N.E.2d 325 (1937). Stratford contends that its reliance was justified because the alleged representations were consistent with Interstate's own interests, the representations were made by several officers and directors of Interstate, the parties' relationship was close and the time constraints surrounding the transaction were severe. These contentions raise an issue of fact for trial.

### The Claims against Bam

The third and fourth causes of action are asserted against the individual defendant Bam for inducing breach of contract and *prima facie* tort. Stratford alleges that Bam caused Interstate to dishonor its oral assurances of financial assistance. In essence, Stratford claims that Bam harbored "personal animosity" toward Naftol, a member of the Management Group. Stratford alleges that Bam instigated a "highly critical" and "wholly unjustified" report concerning Naftol's conduct as chief operating officer of the Division, falsely stated to his fellow directors that Naftol had earlier purchased $50,000,000 of equipment without authorization, and wrote to the chairman of the board of Interstate attacking Naftol's integrity and ability.

■ Under New York law, a director of a corporation is immune from liability to a third party for inducing the corporation to breach a contract with the third party unless it is shown that he committed a tort independent of the alleged breach or acted for his own financial interest and not in the interest of the corporation. *See, e.g., Smith v. Fidelity Mutual Life Insurance Co.*, 444 F.Supp. 594 (S.D.N.Y.1978); *Murtha v. Yonkers Child Care Association*, 45 N.Y.2d 913, 411 N.Y.S.2d 219, 383 N.E.2d 865 (1978); *Di Nardo v. L & W Industrial Park of Buffalo, Inc.*, 74 A.D.2d 736, 425 N.Y.S.2d 704 (4th Dep't.1980); *Countrywide Publications, Inc. v. Kable News Co.*, 74 A.D.2d 522, 425 N.Y.S.2d 15 (1st Dep't. 1980); *Buckley v. 112 Central Park South, Inc.*, 285 A.D. 331, 136 N.Y.S.2d 233 (1st Dep't.1954). Although Stratford alleges that Bam's actions were not taken in good faith and were not in Interstate's best interest, it has not alleged that Bam was motivated by personal profit or that Bam engaged in tortious conduct separate from his conduct as a director. Accordingly, Bam's motion to dismiss the third cause of action is granted.

■ Stratford also alleges a claim of *prima facie* tort against Bam. The elements of a cause of action for *prima facie* tort are: (1) intentional infliction of harm, (2) resulting in special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful. *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 332, 464 N.Y.S.2d 712, 720, 451 N.E.2d 459, 467 (1983). "[T]here is no recovery in prima facie tort unless malevolence is the *sole motive* for defendant's otherwise lawful act ... by which is meant 'that the genesis which will make a lawful act unlawful must be a malicious one unmixed with any other and exclusively directed to injury and damage of another.'" *Id.* at 333, 464 N.Y.

S.2d at 721, 451 N.E.2d at 468 (citations omitted) (emphasis added).

■■■ Stratford has alleged intentional and malicious action by Bam, but it has not alleged facts showing that Bam's sole motivation was "disinterested malevolence." *Id.* Specific facts to support the claim of malice must be asserted. *See, e.g., Reale v. IBM Corp.,* 34 A.D.2d 936, 937, 311 N.Y.S.2d 767, 768–69 (1st Dep't.1970) ("Plaintiff was bound to present proofs tending to exclude any motive other than a desire on the part of defendants to cause harm to plaintiff. The plaintiff's conclusory allegations of malice are not sufficient to establish that he has a case.") *See also Chin v. AT&T,* 96 Misc.2d 1070, 410 N.Y. S.2d 737 (Sup.Ct.N.Y.Co.1978), *aff'd mem.,* 70 A.D.2d 791, 416 N.Y.S.2d 160 (1st Dep't. 1979).

### *Conclusion*

For the foregoing reasons, the motion of defendants Interstate and Bam is granted in part and denied in part. The first cause of action is dismissed insofar as it alleges breach of fiduciary duty. The third and fourth causes of action are dismissed, and the clerk is directed to enter judgment in favor of defendant Bam on those causes of action.

Discovery on the remaining claims of breach of contract and negligent or fraudulent misrepresentation, as well as all discovery in the Interstate action, must be completed by September 10, 1984. The parties are directed to file a proposed joint pretrial order on September 17, 1984 and to attend a final pretrial conference at 4:30 p.m. on that date. The case will be placed on the ready trial calendar at that time.

**IT IS SO ORDERED.**