*560 OPINION OF THE COURT
Richard A. Dollinger, J.
Can a college expense credit for one child, extended to a parent in a separation agreement, extinguish the parent’s child support obligations for both his children? To answer this question requires an examination of the agreement, the rules of contract interpretation, the concept of a parent’s right or ability to waive child support and the public policy under the Child Support Standards Act (CSSA).
In this case, the mother of two children moved to enforce the terms of her separation agreement and judgment of divorce regarding the husband’s child support obligation and to collect arrears. The couple have two sons. One attends college and the other is a high school senior. The parties entered into a separation agreement in June 2014. The agreement required the husband to pay child support until the children were emancipated under the agreement. The amount scheduled to be paid by the father for the benefit of his two sons was $33,996 annually. The amount was calculated using the $141,000 “cap” in the CSSA, even though the couple’s combined family income substantially exceeded that amount.
The agreement also provided that the couple would jointly finance the college education for their sons. The husband would pay 70% of the college cost; the wife the remaining 30% up to a combined cap of $42,000. The parties complied with the agreement until the older son entered his second year of college. At that point, the father terminated his child support, relying on the following sentence in the agreement:
“The father shall be entitled to receive a credit against his child support for payments for college educational expenses as set forth herein.”
It is undisputed that the father, having paid for his share of his oldest son’s college expenses for the first three semesters, had paid an amount that exceeded his annual child support obligation for both sons — $33,996. Because he had paid in excess of the amount of child support — and apparently anticipated paying more in the years to come — the father concluded that these payments were the nub of the “credit” specified in the agreement and eliminated his child support obligation in its entirety. As a consequence, he stopped paying child support.
In his stance before this court, the husband argues that the “credit” sentence is unambiguous — there is a “credit against *561 his child support for payments for college educational expenses”— and, he contends, the analysis by this court ends. He concludes that the court must apply the unambiguous language to dismiss any claim for unpaid child support. He further suggests that the support obligation is not terminated, but just held in abeyance, even though there is no language in the agreement that makes any reference to payments being “held in abeyance.”
The wife, in seeking to enforce the child support obligation, initially argues that the “credit” is not defined in the agreement and she questions what expenses fall within the credit. Second, she argues the language is ambiguous when it is considered in the context of the entire agreement and particularly, she argues that the “credit” is inconsistent with the child emancipation clause in the agreement. If the “credit” for one child’s expenses eliminates child support, she argues that the effect of the clause is to constructively emancipate the older child and, by implication, the younger child as well. She adds that the emancipation of either child would be contrary to the emancipation article in the agreement. She avers that the conflict between these two clauses creates an ambiguity and hence, a hearing to consider parol evidence is required to assist the court in interpreting the “college expense clause” and determine the parents’ intention when they agreed to that clause. Third, in the face of the alleged ambiguity, she seeks to enforce an interpretation most favorable to her — which does not terminate child support — because the husband’s attorney drafted the agreement. In the alternative, the wife argues for a modification of child support, arguing that a change in the child support language would be in the best interests of the children. She argues that because the father’s income has increased by more than 15%, his child support should be modified based on his actual annual income which exceeds, she estimates, $600,000.
The father, in response to the mother’s request for a modification of child support, attests to his contributions to his son’s college expenses, adding that he has paid additional college preparatory expenses for his younger son. He forecasts that his younger son will attend college as well and that it will be more expensive than the college his older brother attends. He claims his wife will not contribute to that cost. He also argues that he anticipates paying substantially in excess of the cap on college expenses contained in the separation agreement. He notes that *562 his sons now live at times with him, he has healed any rifts with his sons, his actual payments for his older son’s college education exceed his required contribution under the agreement, and his wife obtained a large equitable distribution at the time of the divorce and continues to receive substantial maintenance. All these factors, the husband suggests, militate against any modification of child support.
The rule of construction to be applied to this agreement is simply stated: to interpret a contract, this court must confine itself to the four corners of the document and only consider extrinsic proof if the contract is ambiguous. If the contract is not ambiguous, it must be enforced according to the plain meaning of its terms. (Mid-State Indus., Ltd. v State of New York, 117 AD3d 1255 [3d Dept 2014].) It is a question of law whether a contract is unambiguous. (W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990].) “A contract is unambiguous if the language it uses has ‘a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion.’ ” (Castella v Seidman, 2013 NY Slip Op 31204[U], *3 [Sup Ct, Suffolk County 2013].) To determine whether a writing is unambiguous, language should not be read in isolation because the contract must be considered as a whole. (Brad H. v City of New York, 17 NY3d 180, 185-186 [2011]; Carucci v Kaplan, 92 AD3d 912 [2d Dept 2012] [no section of the parties’ agreement should be read in isolation; rather, the parties’ agreement must be considered as a whole].)
In contrast, ambiguity is present if language was written so imperfectly that it is susceptible to more than one reasonable interpretation. (Evans v Famous Music Corp., 1 NY3d 452, 458 [2004].) If the ambiguity exists, parol evidence — evidence outside the four corners of the document — may be heard to assist in the interpretation of the agreement. (Schron v Troutman Sanders LLP, 20 NY3d 430, 433 [2013].) Parol evidence of the parties’ intentions at the time may shed light on the meaning of the ambiguous terms and the parties’ intentions. (Lopez v Consolidated Edison Co. of N.Y., 40 NY2d 605, 609 [1976]; 1626 Second Ave. LLC v Salsberg, 105 AD3d 432 [1st Dept 2013]; Siegel v People’s United Bank, 44 Misc 3d 1227[A], 2014 NY Slip Op 51358[U], *7-8 [Sup Ct, Kings County 2014] [contract language is ambiguous when it is “reasonably susceptible of more than one interpretation,” and extrinsic or parol evidence may then be permitted to determine the parties’ *563 intent as to the meaning of that language].) In reviewing these options, this court must be cognizant that its role is interpretative, not selective.
“[W]here . . . the instrument was negotiated between sophisticated, counseled business people negotiating at arm’s length . . . courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include. Hence, courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing.” (Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d 470, 475 [2004] [citations omitted], cited in Argo Partners II LLC v Learning Box LLC, 2015 NY Slip Op 30308[U] [Sup Ct, NY County 2015].)
In this instance, the first stop for this court lies in the text of the agreement.[1] The language of the “credit” is, standing alone, unambiguous. First, there is no limit on the amount of the credit. Second, there is no exact definition of what constitutes “college educational expenses” in the agreement. In the same article of the agreement, the parents did specify which expenses they would be obligated to pay in a proportion set forth in the agreement. These “higher education expenses” included “tuition, fees, room, board, books, school fees, transportation to and from school.” The father, through his motion papers, clearly interprets the phrase “educational expenses” in the credit portion of the article as including tuition. Third, there is nothing in the “credit” language that suggests — one way or the other— that payment for one child’s college expenses can be offset against child support owed for the other child. In short, there are no limitations on what portion of the child support — for both sons — would be offset by the college educational expenses “credit.” Under these circumstances, this language — standing alone — would appear to be an unambiguous direction that the father, upon paying college expenses including tuition for one child in excess of his annual child support obligation for both sons, would have no further child support payments.
However, this court, in deciding whether the term is ambiguous, may not consider this clause in isolation. (Fiserv Solu *564 tions, Inc. v XL Specialty Ins. Co., 94 AD3d 456, 466 [1st Dept 2012] [a court may not read a clause in a policy in isolation, but must consider it in the context of the entire document].) Within the four corners of the agreement is the emancipation clause, which defines certain events in the children’s lives.[2] Curiously, the court has read the separation agreement, but the court cannot find, in its text, any reference to the right of either party to terminate child support upon the emancipation of a child. The judgment of divorce contains such a direction, but this court could not find any such direction in the separation agreement. The agreement references an “emancipation event,” but does not explicitly state that child support for the emancipated child may be terminated upon such an event. However, this court reads the agreement and the judgment of divorce in tandem and concludes that the emancipation language is designed to permit the father to discontinue child support for a child upon emancipation of the child. Importantly, nowhere does the agreement permit the father to terminate child support for the younger child upon emancipation of the older child or vice versa.
What is clear, by the text of the agreement, is that “residency at college” is not an emancipation event. The agreement expressly provides that residence at college “is not [to] be deemed a residence away from the residence of either party and, hence, residence ... at college is not an Emancipation Event.” (Agreement, art IX, ¶ 3.) In addition, the judgment contains a further direction when emancipation occurs: the couple agreed that child support would be “recalculated” (under their agreed formula) “upon an emancipation event.” Read in this light, this portion of the agreement and the terms of the judgment are evidence that this couple only intended child support to be modified if “emancipation” occurred and they agreed that residency at a college would not constitute such an event. This portion of the judgment, read as a stand-alone declaration, completely contradicts the “college expense credit” in the agreement as interpreted by the husband. The former directly states that college attendance — “residency away from home” — will not terminate child support for the college-aged child, much less the younger sibling. The “college expense credit,” standing alone, has the practical consequence that when the expenses for college for either child exceed the an *565 nual support obligation for both sons, child support for both sons ceases. When read together, these clauses — read as part of the agreement and judgment — would seem to create an ambiguity that requires extrinsic evidence and a hearing to determine the parties’ intentions.
But, the father’s reading of this “credit” also collides with strong public policies in New York under the CSSA. The New York courts have required an “express waiver” of child support before absolving a parent of their obligation to support their children. (Matter of Wendel v Nelson, 116 AD3d 1057, 1058 [2d Dept 2014].) The party claiming a waiver must come forward with evidence of a voluntary and intentional relinquishment of a known and otherwise enforceable right to child support. (Matter of Hinck v Hinck, 113 AD3d 681 [2d Dept 2014]; Stevens v Stevens, 82 AD3d 873 [2d Dept 2011].) There is no evidence in the affidavits before this court indicating that the mother, by signing the agreement, was agreeing that when her older child went to college she was voluntarily and intentionally relinquishing her right to support for the younger child. By agreeing to the “education expense credit” for her older child, the mother was not waiving her right to support for her other child.
In addition, the wife’s interpretation of the contract language comports with the sentiment of the New York courts, in interpreting the CSSA, that a “dollar-for-dollar” credit against child support for educational expenses — nearly identical to the language in the agreement before the court — is not enforceable. In Lee v Lee (18 AD3d 508 [2d Dept 2005]), the Court faced a similar “college credit” offset against child support. The Court held:
“it is not the defendant’s overall child support obligation, which in this case encompasses his duty to support four children, that might properly be reduced on account of his payment of ‘college expenses’ on behalf of one or more of those children; rather, the ‘college expenses’ paid on behalf of one particular child, or on behalf of some particular children, could properly serve as a credit only with respect to so much of the defendant’s overall child support obligation as relates to such particular child or children.” (Id. at 512.)
The Court also declined to read the “credit” language as including any expenses other than room and board:
“in respect to any credit against child support that *566 might be granted in connection with the defendant’s payment of ‘college expenses,’ any such credit should be calculated based solely on those expenses that are associated with the cost of room and board, or on other similar expenses of the kind that ‘child support’ is normally intended to defray (see e.g. Wortman v Wortman, 11 AD3d 604 [2004]). Such a credit should not be calculated based on the cost of college tuition, which is beyond the realm of what is normally considered ‘child support.’ Those cases in which, in one context or another, the courts have approved of the reduction of a parent’s child support obligation based on that parent’s payment of tuition expenses do not, in our view, reflect the general rule (see Comstock v Comstock, 1 AD3d 307 [2003]).” (Id.)
This court notes that other courts have followed Comstock v Comstock, albeit not in the same context. In Nash v Yablon-Nash (61 AD3d 832, 833 [2d Dept 2009]), the Court interpreted the phrase educational and related expenses to include “college expenses,” but the Court did not consider whether those expenses reduced the payor’s child support. Some pre-Comstock opinions suggested that “educational expenses” — as an offset to child support — may include tuition. (See e.g. Jablonski v Jablonski, 275 AD2d 692 [2d Dept 2000].) However, the court declines to follow these older precedents in favor of the better logic of more recent appellate holdings that the only permissible credit for a parent is for room and board expenses. (See e.g. Ayers v Ayers, 92 AD3d 623, 625 [2d Dept 2012] [although a noncustodial parent who is paying child support and is contributing to the expenses of a child’s college education is entitled to a credit for the amounts contributed to college expenses during periods when the child lives away from home, such a credit covers only those expenses associated with the child’s room and board, rather than college tuition]; Matter of Iadanza v Boeger, 58 AD3d 733, 734 [2d Dept 2009]; Azizo v Azizo, 51 AD3d 438 [1st Dept 2008].)
Finally, there is no judicial support for allowing a parent to claim tuition expenses — or for that matter, any room or board expenses — that shortchange the support owed for a second child. In Matter of Levy v Levy (52 AD3d 717 [2d Dept 2008]), the Court said:
“it is not the payor’s overall child support obligation ‘that might properly be reduced on account of his payment of “college expenses” on behalf of one *567 or more of those children; rather, [it is] the “college expenses” paid on behalf of one particular child, or on behalf of some particular children, [which] could properly serve as a credit only with respect to so much of the [payor] ’s overall child support obligation as relates to such particular child or children.’ ” (Id. at 718-719.)
Under these circumstances, while the “education expense credit” is ambiguous in the context of the agreement, this court can not resolve the ambiguity without reference to New York’s strong preference in favor of continuing child support when a child enters college. The phrase “educational expenses” in this section of the agreement can only be read to be limited to “room and board” costs for the older child. Furthermore, any such costs, while eligible to reduce the support paid for the older child, should not reduce the child support to be paid for the second child. The second child is entitled to his presumptive payments of child support and the credit rendered to the father should not reduce the support payments below that amount.
Under these circumstances, this court would conclude that as a matter of contract law, there is an ambiguity in the agreement as to the meaning of “the college educational expenses” credit and its interpretation under the emancipation clauses in the agreement and the judgment of divorce. However, when interpreted against the public policy of the CSSA and the string of judicial decisions affirming a limitation on any college-related credit to only room and board expenses and applying the credit against those expenses for the subject child while leaving the support for the non-college-aged child intact, the ambiguity must be resolved against the husband. The cost of tuition may not be included in the credit sought by the husband: only room and board expenses may be included. Child support for both the older child — offset by the credit — and the younger child — without any offset — should be recalculated.
As a final consideration, the couple, in their agreement, allowed a recalculation of the child support using the cap at “the parent’s current income at the salary cap as established herein” provided maintenance terminated or an emancipation event occurred. Maintenance is not terminated and no emancipation event has occurred. Therefore, this provision appears to be inactive to resolve the future support for the children. The parties did opt out of the application of the automatic adjustment provisions of the CSSA in their agreement, but because there *568 is no event to trigger recalculation, the parties need to negotiate the payment of child support or have this matter resolved at a hearing.
The mother’s application to enforce the judgment of divorce is granted in part. The wife is awarded judgment in the amount of unpaid support from September 1, 2014, through April 1, 2015. The court declines to find the father in contempt. The court holds he had a legitimate contractual argument for his decision and while this court rejects his reading of the agreement, the court refuses to find his failure wilful. The husband gets a credit for room and board expenses paid both in school years 2013-2014 and 2014-2015. The child support paid by the father was calculated under the CSSA. In this court’s view, the “educational expense credit” may reduce the child support to an amount no less than the presumptive amount that would be paid for the remaining non-college-aged child. The mother’s request to modify child support by using the father’s income in excess of $141,000 — the current statutory cap — is denied. There is no evidence that the prior support — before the father terminated his support payments — was inadequate to provide for the children. The mother is awarded counsel fees, as the agreement expressly provides and counsel shall submit an affidavit detailing fees on notice to opposing counsel and when an order is delivered, pursuant to this opinion, the court shall determine an appropriate amount of fees, costs and disbursements to insert in the order.

. The agreement was incorporated, but not merged, into the judgment of divorce.

. The emancipation article immediately follows the subparagraph detailing the father’s credit against his child support.